1  JOHN H. HEMANN (SBN: 165823)
   JOSEPH E. FLOREN (SBN 168292)
2  THOMAS R. GREEN (SBN: 203480))
   MATTHEW S. WEILER (SBN 236052)
3  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   E-mail:   jhemann@morganlewis.com
6            jfloren@morganlewis.com
             tgreen@morganlewis.com
7            mweiler@morganlewis.com

8  Attorneys for KLA-Tencor Corporation

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13 CHRIS CRIMI, on Behalf of Himself and All       Case No. CV-08-2249 CRB
   Others Similarly Situated,
14                                                 **DEFENDANT KLA'S NOTICE OF**
                     Plaintiff,                    **MOTION AND MOTION TO**
15                                                 **DISMISS PURSUANT TO**
             vs.                                   **FEDERAL RULE OF CIVIL**
16                                                 **PROCEDURE 12(B)(6);**
   EDWARD W. BARNHOLT, H. RAYMOND                  **MEMORANDUM OF POINTS AND**
17 BINGHAM, ROBERT T. BOND, RICHARD J.             **AUTHORITIES**
   ELKUS, JR., STEPHEN P. KAUFMAN,
18 KENNETH LEVY, MICHAEL E. MARKS,                 DATE:     June 13, 2008
   DEAN O. MORTON, KENNETH L.                      TIME:     10:00 a.m.
19 SCHROEDER, JON D. TOMPKINS,                     DEP'T:    Courtroom 8
   RICHARD P. WALLACE, KLA-TENCOR
20 CORPORATION, and DOES 1 through 25,             Hon. Charles R. Breyer

21                   Defendants.

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................2

II.   FACTUAL AND PROCEDURAL BACKGROUND .....................................................4

III.  ARGUMENT .................................................................................................................6

    A.    Plaintiff's Causes of Action are Barred by SLUSA.............................................6

    B.    Plaintiff Cannot State a Claim for Breach of Fiduciary Duty of Disclosure.........10

        1.    Plaintiff Lacks Standing to Assert Claims Based on the Actual Backdating. ...............................................................................................10

        2.    Plaintiff Can Plead No Duty to Disclose. ................................................12

        3.    Plaintiff's Allegations of Harm from Non-disclosure Lack Merit............13

        4.    Plaintiff's Fails to Plead Breach of the Duty of Disclosure with Specificity. ...............................................................................................14

    C.    All Three of Plaintiff's Causes of Action Should be Dismissed Because They are Each Derivative Under Delaware Law. .................................................14

        1.    Plaintiff Alleges No Harm Independent Of Harm To The Company. ......15

        2.    All Three of Plaintiff's Claims are Derivative Because They Each Seek a Remedy, Rescission, that Benefits the Corporation at Large. .......20

        3.    Plaintiff Lacks Standing To Bring A Derivative Claim ...........................21

    D.    Plaintiff's Section 1507 Claim Fails as a Matter of Law. ...................................21

IV.   CONCLUSION ............................................................................................................22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ash v. McCall,*
 2000 WL 1370341 (Del. Ch. Sept. 15. 2000)..................................................21

*Bell Atalntic Corp. v. Twombly,*
 127 S. Ct. 1955 (2007) ..........................................................................................6

*Bradley v. First Interstate Bancorp,*
 748 A.2d 913 (Del. 2000)....................................................................................21

*Bradley v. First Interstate Bancorp,*
 748 A.2d 913 (Del. 2000)....................................................................................21

*Bray v. Oklahoma Pub. Co.,*
 Civ. A. No. 10793, 1991 WL 189136 (Del. Ch. Sept. 24, 1991) .........................20

*Conley v. Gibson,*
 355 U.S. 41 (1957)................................................................................................6

*De La Cruz v. Tormey,*
 582 F.2d 45 (9th Cir. 1978),
 *cert. denied,* 441 U.S. 965 (1979)..........................................................................6

*Desimone v. Barrows,*
 924 A.2d 908 (2007) .....................................................................................10, 11

*Edgar v. MITE Corp.,*
 457 U.S. 624 (1982)......................................................................................10, 14

*Elster v. Am. Airlines, Inc.,*
 100 A.2d 219 (Del. Ch. 1953) ......................................................................passim

*Falkowski v. Imation Corp.,*
 309 F.3d 1123 (9th Cir. 2002) ..............................................................................7

*Feldman v. Cutaia,*
 2007 WL 2215956 (Del .Ch. Aug. 1, 2007) ..........................................15, 16, 18

*Gentile v. Rossette,*
 906 A.2d 91 (Del. 2006).......................................................................................17

*In re Computer Sciences Corp. Derivative Litigation,*
 244 F.R.D. 580(C.D. Cal. 2007)...........................................................................19

*In re Edward Jones Holders Litigation,*
 453 F. Supp. 2d 1210 (C.D. Cal. 2006)..................................................................7

*In re Hollinger Int'l., Inc. Sec. Litig.,*
 Case No. 04-C-0834, 2006 WL 1806382 (N.D. Ill. June 28, 2006) .......................8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

1-SF/7701094.2

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

1

**TABLE OF AUTHORITIES**<br>(continued)

2

**Page**

3

*In re Salomon Smith Barney Mut. Fund Fees Litig.,*
   441 F. Supp. 2d 579 (S.D.N.Y. 2006) ............................................................................... 8

4

*In re Stac Elecs. Sec. Litig.,*
   89 F.3d 1399 (9th Cir. 1996) ........................................................................................... 19

5

6

*In re Thortec Sec. Litig.,)*
   1989 WL 67429 (N.D. Cal. Jan. 25, 1989) ................................................................. 21, 22

7

*Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn,*
   2008 WL 878424 (N.D. Cal., 2008 March 28, 2008) ...................................................... 15

8

9

*Loudon v. Archer-Daniels-Midland Co.,*
   700 A.2d 135 (Del. 1997) ........................................................................................... 12, 14

10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
   547 U.S. 71 (2006) ................................................................................................... 6, 7, 8

11

12

*Omnicare, Inc. v. NCS Healthcare, Inc.,*
   809 A.2d 1163 (Del. Ch. 2002) ...................................................................................... 11

13

*Vogel v. Jobs,*
   No. 06-5208 JF, 2007 WL 3461163 (N.D. Cal. Nov. 14, 2007) ...................................... 19

14

*Wolf v. Assaf ,*
   1998 WL 326662 (Del. Ch. June 16, 1998) .................................................................... 13

15

16

*Zoren v. Genesis Energy, L.P.,*
   195 F. Supp. 2d 598 (D. Del. 2002) ......................................................................... 6, 8, 9

17

**Statutes**

18

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),
   15 U.S.C. § 78bb ...................................................................................................... passim

19

20

15 U.S.C.
   § 77bb(f)(5)(E) ................................................................................................................. 7
   § 77p(f)(3) ......................................................................................................................... 7

21

   § 77r(b) .............................................................................................................................. 7
   § 78bb(f)(1)(A) ................................................................................................................. 9

22

   § 78bb(f)(1)(B) ................................................................................................................. 9
   § 78bb(f)(3)(a)(iii) ............................................................................................................ 9

23

   § 78bb(f)(5)(B) ................................................................................................................. 6

24

Cal. Code Civ. Proc.,
   § 430.30(a) ...................................................................................................................... 19

25

26

Cal. Evidence Code
   § 452(h) .......................................................................................................................... 18

27

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

**Regulations**

4

H.R. Conf. Rep. No. 105-803 (1998) ............................................................................6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

1-SF/7701094.2

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 13, 2008, at 10:00 a.m., at 450 Golden Gate Ave., San Francisco, California, in Courtroom 8, Defendant KLA-Tencor Corporation ("KLA"), by and through its undersigned counsel, will, and hereby does, move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dismissal is required here because (1) all of Plaintiff's causes of action are barred, in whole or in part, by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb; (2) Plaintiff has not, and cannot, plead that KLA officers and directors had a duty to disclose "backdating" of KLA stock options at the relevant time periods; and (3) Plaintiff's claim for breach of fiduciary duty of disclose can only be maintained derivatively, if it can be maintained at all.

This motion is based on this notice of motion and motion, all of the papers on file with this Court, all of the papers that were originally filed in the Superior Court for the County of Santa Clara, and any argument that will be presented at the hearing.

**ISSUES TO BE DECIDED [N.D. L.R. 7-4(a)(3)]**

1.    May Plaintiff maintain class claims that are preempted by SLUSA?

2.    Can Plaintiff plead a claim for breach of fiduciary duty for failing to disclose historic backdating?

3.    Can Plaintiff's claim for breach of fiduciary duty be maintained as a direct action?

Dated: May 7, 2008                    MORGAN, LEWIS & BOCKIUS LLP


By _____/s/_____
                              Matthew S. Weiler

Attorneys for Defendant KLA-Tencor Corporation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7701094.2                    1                    **12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    **INTRODUCTION**

3      Plaintiff's First Amended Complaint ("FAC") states no claim against defendant KLA-

4   Tencor Corporation ("KLA" or "the Company").  Apparently recognizing that he lacks standing

5   to bring a derivative claim in the name of KLA, Plaintiff seeks to fashion a direct cause of action

6   against KLA for non-disclosure of historic backdating of stock options ("backdating")[1] that

7   occurred before he was a shareholder.  Under Delaware law, Plaintiff does not have standing to

8   challenge activities that predated his ownership of KLA stock; indeed, Plaintiff pleads no single

9   instance of backdating that occurred when he was a shareholder.  Moreover, Plaintiff does not

10  allege that he is currently a KLA shareholder.  FAC ¶ 1.  For these reasons, he lacks standing to

11  bring a derivative action, and instead attempts to turn back the clock by fashioning a failure to

12  disclose claim, seeking relief for transactions that occurred prior to his stock ownership.

13  Plaintiff's attempt to plead such a cause of action against KLA fails for several reasons.

14      **First**, all of Plaintiff's claims are barred, in whole or in part, by the Securities Litigation

15  Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb.  Plaintiff filed his FAC after the

16  Santa Clara Superior Court sustained KLA's demurrer to his original complaint, with leave to

17  amend.  While his original complaint alleged causes of action for breach of fiduciary duty related

18  to voting rights, Plaintiff has amended his complaint to allege "holder" claims—namely that

19  misstatements and omissions harmed him and other shareholders because they held KLA shares

20  when, had they known the true state of affairs at KLA, they would not have done so.  All of

21  Plaintiff's causes of action allege harm related to holding shares of KLA.  FAC ¶¶ 74-95.  These

22  _____

23  [1]  "Backdating," also termed "retroactive pricing," generally refers to the selection of exercise
    prices for stock options based not on the market price for the underlying stock on the date the
24  option grant was completed or finally approved, but on a lower market price for the stock on
    an earlier date.  The actual grant date, or "measurement date" for accounting purposes, is
25  deemed to be the date that all essential actions necessary to complete the granting of the
    option are concluded, including identification of all grantees and final determination of the
26  number of shares granted to each and the exercise price of the option.  Options are said to be
    "backdated" or "retroactively priced" if the exercise price is set as of a date before the
27  measurement date.  *See generally* FAC ¶¶ 29-31, 66.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

1-SF/7701094.2

1    "holder" claims are clearly barred by the SLUSA, which mandates that class actions securities

2    suits should only be brought in federal court under federal law.[2]

3        **Second**, Plaintiff has not, and cannot, state a claim for the breach of fiduciary duty to

4    disclose.  To the extent that Plaintiff alleges a claim for breach of fiduciary duty based on activity

5    that is not barred by SLUSA, such as an omission in connection with a request for shareholder

6    action, Plaintiff's claim fails as a matter of law because he can allege no duty to disclose at the

7    time he was asked to vote on the measures described in his FAC.  There has been no adjudication

8    regarding the backdating Plaintiff alleges, and the allegations themselves did not come to light

9    until May of 2006.  Plaintiff alleges that KLA announced in May of 2006 that a Special

10   Committee of independent directors was formed to look into the backdating allegations, and that

11   investigation resulted in a January 2007 announcement that KLA had backdated certain options

12   grants.  FAC ¶ 62.  The finding of this informal investigation, however, is not an adjudication for

13   purposes of Delaware law, and KLA was not required to disclose that there had been any

14   wrongdoing *over two years earlier*, when Plaintiff "approved" certain shareholder measures.

15   FAC ¶¶ 77, 83 (alleging "approval" of stock and stock options issued in 2003 and 2004).  Not

16   surprisingly, Delaware law does not impose a duty of self-flagellation on officers and directors,

17   requiring them to admit to wrongdoing before any allegation or investigation, yet alone

18   adjudication, of wrongdoing.

19       **Third**, even assuming there were such a duty to disclose, Plaintiff's claims would fail for

20   the additional reason that they are derivative in nature and cannot be brought directly.  Plaintiff

21   fails to state a direct shareholder cause of action for breach of fiduciary duty because the

22   fundamental harm alleged by Plaintiff is dilution, a harm that is plainly derivative under

23   controlling Delaware law, and for which only the Company could have a potential right to

24   recover.

25

26   [2]   Plaintiff's claim for violation of California Corporations Code § 1507 cannot be
27   maintained at all, as a class action or otherwise, because KLA is a California Corporation.
     *See* Section III.D., *infra*.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff seeks relief for the failure to disclose historic backdating at KLA.  The FAC before this Court represents Plaintiff's second attempt to state a cause of action.  Plaintiff's original complaint was filed on or about September 4, 2007, in Santa Clara County Superior Court.  Judge Komar granted KLA's demurrer to Plaintiff's original complaint on the ground that Plaintiff's causes of action for breach of fiduciary duty and rescission could not be maintained in a direct action.  KLA successfully argued that Plaintiff's complaint sought relief from damages resulting from dilution caused by the issuance of KLA shares, a harm that is derivative in nature under Delaware law.

Plaintiff made limited changes to his original complaint in order to attempt to state a cause of action.  First, without changing the substance of his allegations, he removed the term "dilution" from his complaint.  Second, he added a claim under California Corporations Code § 1507, based on the same theory that KLA's conduct led to the addition of "hundreds of thousands to millions of shares" in the market.  FAC ¶ 77.  Third, he now pleads two claims for breach of fiduciary duty predicated on the same facts, splitting the single claim in the original complaint into causes of action for "Breach of Fiduciary Duty of Due Care and Loyalty" and "Breach of Fiduciary Duty of Disclose."  FAC ¶¶ 80-85, 86-95.  As before, Plaintiff alleges he was harmed when KLA issued false or misleading proxy statements and Forms 10-K that caused KLA to issue "hundreds of thousands to millions" of shares pursuant to certain stock options plans.  FAC ¶¶ 77, 83.  This time around, Plaintiff also alleges that the proxy statements and Forms 10-K containing the alleged misrepresentations caused him to "hold" his shares of KLA when he otherwise would not have.  *Id.*  As the new California Corporations Code cause of action and "holder" allegations brought all of Plaintiff's claims within the reach of SLUSA, KLA removed this action on April 30, 2008.

The essence of the FAC has not changed from the original complaint.  In each pleading Plaintiff alleges that KLA and its directors and officers failed to disclose the backdating of certain stock option grants from 1997 through June 2002.  He further alleges that Defendants made material misrepresentations by failing to disclose the backdating in proxy statements and forms

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

1-SF/7701094.2

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

1  10-K into 2006.  FAC ¶ 76.  Among other relief, Plaintiff seeks the rescission of options issued

2  *after* June 2002, during the putative class period from September 20, 2002 through September 27,

3  2006—relief that would cause the rescission of option grants not alleged to have been backdated.

4  FAC, Prayer for Relief, ¶ 4.

5        Plaintiff's tortured attempt to state a non-derivative cause of action not barred by SLUSA

6  is due to the fact that he is no longer a shareholder capable of stating a derivative claim and the

7  reality that numerous other plaintiffs have beaten Mr. Crimi to the punch in alleging claims that

8  may actually apply to him.  There are currently multiple derivative and class action lawsuits

9  based on the same alleged failure to disclose options backdating at KLA, asserted against the

10  same defendants.  The earlier plaintiffs filed cases in three different courts in mid-2006, on the

11  heels of a May 22, 2006 *Wall Street Journal* article suggesting that KLA and several other

12  companies had "backdated" stock options between 1994 and 2001.  *See* FAC ¶ 47.  Between May

13  22, 2006 and July 3, 2006, five shareholder derivative actions were filed in the United States

14  District Court for the Northern District of California, San Jose Division, each of which asserted

15  claims based on the same stock option backdating and related misstatements against nominal

16  defendant KLA and current and former officers and directors of KLA, including all of the

17  defendants in the instant case.  These cases have been consolidated and are now pending under

18  the caption *In re KLA-Tencor Corporation Shareholder Derivative Litigation*, Case. No. 06-

19  03445 JW (N.D. Cal.).  *See* Request for Judicial Notice in Support of KLA's Motion to Dismiss

20  Pursuant to FRCP 12(b)(6) filed May 7, 2008 (" RJN"), Ex. 1.  A derivative action is pending in

21  the Santa Clara Superior Court under the caption *Rabin v. Barnholt, et al.*, No. 1-06-CV-064841.

22  RJN, Ex. 2.  A hybrid derivative-class action that alleges both derivative claims and a shareholder

23  class claim for breach of fiduciary duty is pending in the Delaware Chancery Court under the

24  caption *Langford v. Barnholt, et al.*, No. 2295-N.  RJN, Ex. 3.  Yet another consolidated

25  shareholder class action, in which the plaintiffs assert federal securities causes of action, is

26  pending in the United States District Court for the Northern District of California under the

27  caption *In re KLA-Tencor Corporation Securities Litigation*, No. C 06-4065 CRB.  RJN, Ex. 4.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

### III.    **ARGUMENT**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in the complaint.  Dismissal is appropriate under Rule 12(b)(6) where the complaint fails to plead a cognizable legal theory or sufficient facts supporting a cognizable legal theory.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007) (rejecting the more liberal "no set of facts" and imposing an obligation on plaintiffs to plead facts sufficient to "raise a right to relief above the speculative level"); s*ee also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965 (1979).  As shown below, Plaintiff's causes of action fail as a matter of law because they are barred by SLUSA, Plaintiff cannot plead a duty to disclose, and because his breach of fiduciary duty claims are derivative in nature.

### A.    **Plaintiff's Causes of Action are Barred by SLUSA**

SLUSA was enacted to preempt the state statutory and common law class action claims in Plaintiff's First, Second, and Third Causes of Action.  Congress passed the Private Securities Litigation Reform Act of 1995 to raise the pleading standards for securities fraud suits.  After the Reform Act, plaintiffs began evading the pleading standards of the new federal law by redirecting their class claims to state courts under state law.  By 1998, Congress concluded that plaintiffs were "circumvent[ing] the [Reform] Act's provisions. . . by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available." H.R. Conf. Rep. No. 105-803, at 14-15 (1998).  SLUSA was enacted in 1998 to "stem this 'shif[t] from Federal to State courts' and 'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of' the Reform Act...." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 82 (2006) (citations omitted).

SLUSA provides for removal and dismissal of any (1) "covered class action," (2) based on statutory or common law of any state, (3) alleging a misrepresentation or omission of a material act, or an act of deception, (4) "in connection with the purchase or sale of a covered security." *Id.* at 82-83 & n.7 (quoting 15 U.S.C. § 78bb(f)(1)); *Zoren v. Genesis Energy, L.P.,* 195 F. Supp. 2d

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6
1-SF/7701094.2

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

1   598, 603 (D. Del. 2002).  All of these criteria apply to Plaintiff's claims.

2          First, SLUSA defines a "covered class action" as a lawsuit in which damages are sought

3   on behalf of more than 50 people. 15 U.S.C. § 78bb(f)(5)(B).  Plaintiff pleads that the first cause

4   of action is brought on behalf of a class that comes within this provision.  FAC ¶ 1.

5          Second, Plaintiff's claims include causes of action predicated on a violation of a

6   California statute and breaches of fiduciary under Delaware common law.  *Id.* ¶¶ 74-95.

7          Third, the FAC unambiguously bases its claim on alleged misrepresentations or omissions

8   of material fact and alleged acts of deception.  *Id.* ¶¶ 65-69, 76, 83.

9          Fourth, the alleged misrepresentations and deceptive actions were allegedly made in

10  connection with the purchase or sale of a covered security.[3]  The Supreme Court in *Dabit* made it

11  clear that "holder" claims such as Plaintiff's three causes of action, where a plaintiff alleges he

12  held his stock because of actions or omissions, are "in connection with the purchase and sale of

13  securities."[4]  *In re Edward Jones Holders Litigation*, 453 F. Supp. 2d 1210, 1216 (C.D. Cal.

14  2006) ("In light of the *Dabit* decision, it is clear to the Court that Plaintiffs' 'holder' claims arise

15  'in connection with the purchase or sale' of securities.").  Thus, Plaintiff's "holder" claims are

16  based on the alleged purchase or sale of a covered security under SLUSA.

17         The Supreme Court's decision in *Dabit* is instructive here.  In *Dabit,* plaintiffs filed an

18  action in federal court asserting claims for breach of fiduciary duty under Oklahoma state law.

19  _____

20  [3]    SLUSA defines "covered security" to include securities that are "traded nationally and
       listed on a regulated national exchange" (*see Dabit*, 547 U.S. at 83), such as the New
21     York Stock Exchange, the American Stock Exchange or the Nasdaq National Market. *See*
       15 U.S.C. § 77r(b), 77p(f)(3), 78bb(f)(5)(E).  KLA's common stock, which is traded on
22     the national exchange (FAC ¶ 2), is a "covered security."

23  [4]    Although Plaintiff alleges that the alleged misrepresentations and deceptive acts
       concerned the granting of KLA stock options, not KLA stock, this makes no difference:
24     "Whether or not an option grant is a sale in the lay sense, it is a sale under the securities
       laws because it is a contract to sell a security when the option is exercised." *Falkowski v.*
25     *Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002)  (holding that SLUSA preempted
       state fraud claims brought by former employees who alleged that the employer falsely
26     concealed an impending accounting write-off and a plan to force early exercise of options
       in connection with their employee stock option plans), amended on other grounds, 320
27     F.3d 905 (9th Cir. 2003).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1   Plaintiffs alleged that Merrill Lynch caused its brokers to issue false and misleading statements

2   regarding the value of its investment banking clients' stocks.  According to plaintiffs, these false

3   and misleading statements caused them to hold onto overvalued securities.  The Second Circuit

4   held that SLUSA did not apply to claims by "holders" who did not sell their shares.

5       The Supreme Court reversed the Second Circuit's decision, holding that SLUSA preempts

6   state law claims by "holders" of covered securities.  The Supreme Court made it clear in *Dabit*

7   that this provision requires showing a "deception 'in connection with the purchase or sale of any

8   security,' not deception of an identifiable purchaser or seller." *Dabit,* 547 U.S. at 85 (citation

9   omitted).  Therefore, the Supreme Court continued, "it is enough that the fraud alleged 'coincide'

10  with a securities transaction – whether by the plaintiff or someone else." *Id.* (citation omitted).

11  This holding effectuates the Supreme Court's firm rejection of a narrow construction of SLUSA's

12  preemption provision in favor of a "broad interpretation." *Id.  See In re Hollinger Int'l., Inc. Sec.*

13  *Litig.,* Case No. 04-C-0834, 2006 WL 1806382, at *17 (N.D. Ill. June 28, 2006) (SLUSA

14  preempted state law breach of fiduciary duty claim for inducing retention of stock).

15      Plaintiff's claims here fall within *Dabit's* holding.  As discussed above, Plaintiff alleges

16  that from 1997 to June of 2002 the individual Defendants backdated stock option awards.

17  Moreover, he alleges that the Defendants misrepresented KLA's stock option plans and awards in

18  the Company's SEC filings and Proxy Statements into 2006, thereby understating the Company's

19  compensation expense, overstating net income, and misstating the Company's tax provisions.

20  FAC ¶¶ 66-69.  Plaintiff contends he relied on Defendants' alleged misrepresentations in his

21  decisions to:  (1) continue holding KLA stock; (2) "allow" stock options to issue pursuant to an

22  automatic Company "evergreen" provision; and (3) approve the 2004 Equity Incentive Plan.  *Id.*

23  ¶¶ 77, 83.  Under *Dabit,* the SLUSA preemption provision is satisfied if the alleged

24  misrepresentations or deceptive acts simply "coincide" with the securities transaction.  Thus,

25  SLUSA applies to Plaintiff's claimed misrepresentations whether he personally purchased shares

26  in connection with the misrepresentations or not.  *See also In re Salomon Smith Barney Mut.*

27  *Fund Fees Litig.,* 441 F. Supp. 2d 579, 603-04 (S.D.N.Y. 2006) (SLUSA preempted state

28  common law breach of fiduciary duty claims by holders of mutual fund shares against fund

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

1    advisors based on alleged improper fees, payments of soft dollars, and unauthorized use of direct

2    brokerage); *Zoren,* 195 F. Supp. 2d at 605 (SLUSA preempted state law breach of fiduciary duty

3    claims based on proxy statements that allegedly misrepresented the company's restructuring plans

4    even though restructuring did not involve purchase or sale of a security).

5           Plaintiff's First Cause of Action for violation of California Corporations Code § 1507 is

6    clearly barred by SLUSA.  Section 1507 provides liability for issuing false financial statements

7    "or documents respecting the corporation or its shares, assets, liabilities, capital, dividends,

8    business, earnings, or accounts."  *Id.*  SLUSA bars all class actions alleging "misrepresentation or

9    omission of a material fact," or use of a "manipulative or deceptive device or contrivance."  15

10   U.S.C. § 78bb(f)(1)(A) and (B).  SLUSA on its face prevents application of state law securities

11   claims to class action alleging claims such as Section 1507.  Also, Plaintiff has pled this cause of

12   action as a "holder" claim, which, as discussed above, is barred by SLUSA.  *Dabit,* 547 U.S. at 85

13   (citation omitted).  This is precisely the type of action that SLUSA prevents from being

14   maintained as a class action.

15          Plaintiff's Second and Third Causes of Action for breach of fiduciary duty are also barred,

16   regardless of whether they are brought under California or Delaware law, because they are

17   "holder" actions under SLUSA.  FAC ¶ 83.  Though SLUSA makes exceptions for class actions

18   brought under the state of incorporation concerning certain requests for shareholder action, none

19   of these exceptions can save Plaintiff's "holder" claims.  SLUSA makes exceptions for class

20   actions brought under the state of incorporation concerning (1) "the purchase or sale of securities

21   by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the

22   issuer" and (2) "decisions of such equity holders with respect to voting their securities, acting in

23   response to a tender or exchange offer, or exercising dissenters' or appraisal rights."  15 U.S.C.

24   78bb(f)(3)(a)(iii).

25          Plaintiff's breach of fiduciary duty causes of action arise, at least in part, from Plaintiff

26   "holding" his shares of KLA.  Plaintiff's Second Cause of Action alleges that Defendants "failed

27   to disclose KLA-Tencor's true financial condition or prospects" and that that "unfairly deprived

28   plaintiff and other members of the Class of the ability to make an informed decision concerning

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1    whether they should … continue holding their shares of KLA-Tencor stock." FAC ¶ 83.

2    Plaintiff's Third Cause of Action, relies on his allegations from the prior two "holder" claims and

3    states that he "and each member of the Class is suffering irreparable injury and damages." FAC ¶

4    90. These "holder" allegations fall outside of the exception created by SLUSA, and must be

5    dismissed. *Zoren*, 195 F. Supp. 2d at 604 (dismissing breach of fiduciary duty claims brought

6    under Delaware law because no SLUSA "carve-out" applies).

7        Accordingly, all of Plaintiff's causes of action are preempted under SLUSA and should be

8    dismissed as a matter of law.

9        **B.    Plaintiff Cannot State a Claim for Breach of Fiduciary Duty of Disclosure.**

10

11       To the extent any of his claims survive the SLUSA bar, Plaintiff does not, and cannot,

     state a claim for breach fiduciary duty[5] for failing to disclose historic backdating at KLA in Proxy

12   Statements or Forms 10-K.

13

14       **1.    Plaintiff Lacks Standing to Assert Claims Based on the Actual
                Backdating.**

15

16       As an initial matter, Plaintiff can assert no claim for any transaction that predates his

17   ownership of KLA stock. Delaware law, which indisputably applies to Plaintiff's claims,[6] plainly

18   [5]   Plaintiff's Second and Third Causes of Action are duplicative. Plaintiff's Second Cause
         of action alleges the failure to disclose. *See* FAC ¶¶ 82 (defendants failed to make
19       "proper disclosures concerning the true financial condition of KLA); 83 (defendants
         "failed to disclose KLA-Tencor's true financial condition or prospects"). Plaintiff's Third
20       Cause of action contains substantially identical allegations. *See* FAC ¶¶ 87 (alleging KLA
         owed "a duty of complete candor, requiring them to fully disclose all material facts
21       concerning the grant of stock options and related transactions which were voted on by
         plaintiff"); 88 (alleging defendants "breached their duty of candor and full disclosure");
22       89 (same). Although he denominates them as "Breach of Fiduciary Duty of Due Care and
         Loyalty" and "Breach of Fiduciary Duty of Disclose," respectively, both premise the
23       breach of fiduciary duty on the failure to disclose the effects of historic backdating.

24   [6]   KLA is a Delaware corporation (*see* FAC ¶ 17), and the claim patently concerns KLA's
         internal affairs. The internal affairs doctrine requires that the law of the state of
25       incorporation applies when the lawsuit covers the subject matter of a corporation's dispute
         with shareholders. *Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982) ("[t]he internal
26       affairs doctrine is a . . . principle which recognizes that only one State should have
         authority to regulate a corporation's internal affairs, [i.e.,] matters peculiar to the
27       relationships among or between the corporation and its current officers, directors, and

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

10
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

forbids Plaintiff from "purchasing" claims against KLA by seeking relief arising from backdating

that occurred prior to Plaintiff owning shares of KLA. *Desimone v. Barrows*, 924 A.2d 908, 924

(2007) ("Section 327 of the Delaware General Corporation Law requires that a derivative plaintiff

have been 'a stockholder of the corporation at the time of the transaction of which [he]

complains.'"). The facts of *Desimone* are instructive here. In *Desimone*, as here, a plaintiff

brought an action for breach of fiduciary duty seeking relief arising from historic stock options

backdating, alleging that Sycamore Networks, Inc., backdated certain stock options grants

between 2000 and 2003. *Id.* at 31. The Delaware Court of Chancery granted defendants' motion

to dismiss and held that plaintiff lacked standing to challenge grants made prior to plaintiff's

ownership of Sycamore stock. The Court of Chancery stated "[plaintiff] has only held stock in

Sycamore since February 2002 and lacks standing under 8 Del. C. § 327 to pursue the lion's share

of the claims he asserts, most of which are based on options grants that occurred in 2000 and

2001." *Id.* at 913. The instant dispute is an even clearer application of this principle because

Plaintiff has not alleged *one single instance* of backdating that occurred while he was a

shareholder of KLA. While *Desimone* was a derivative action, Delaware law unequivocally

extends the principles of Section 327 to direct claims as well:

> The policy against purchasing lawsuits involving the internal relations of
> Delaware corporations was codified in the derivative suit context by 8 Del. C. §
> 327. The policy animating 8 Del. C. § 327 is not, however, limited to derivative
> claims alone. Rather, that policy is derived from "general equitable principles"
> and has been applied to preclude stockholders who later acquire their shares from
> prosecuting direct claims as well.

*Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169-1170 (Del. Ch. 2002).

Plaintiff lacks standing under *Desimone* and *Omnicare* to assert claims for the actual

backdating itself or any failure to disclose historic backdating in Company documents that

---

shareholders.") Accordingly, Delaware law applies to shareholder actions, such as this
one, related to the issuance of stock options. *See also Elster v. Am. Airlines*, 100 A.2d 219
(Del. Ch. 1953) (applying Delaware law to claims related to issuance of stock options);
*Beard v. Elster*, 120 A.2d 731, 735 (Del. Ch. 1960) ("The issuance of stock option plans
by Delaware corporations involves the internal affairs of a Delaware corporation and is,
therefore, controlled by the laws of Delaware.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1    predate Plaintiff's ownership of KLA stock.  Accordingly, the factual support for Plaintiff's

2    Second and Third Causes of Action must postdate his ownership of KLA stock.  The only factual

3    allegation that satisfies this requirement is his allegation that defendants failed to disclose the

4    historic backdating in Definitive Proxies and Forms 10-K issued between September 22, 2002

5    and September 27, 2006, the four year period Plaintiff alleges that he held KLA shares.  FAC ¶ 1.

6                           **2.      Plaintiff Can Plead No Duty to Disclose.**

7          Defendants indisputably **had no fiduciary duty** to disclose during the time period in

8    question – long before stock option backdating became an issue at any company and without any

9    formal adjudication of the matter – that any individual director was supposedly involved in

10   historic backdating practices in earlier years.  Directors standing for election are not required to

11   "confess to wrongdoing prior to any adjudication of guilt," nor must any defendant in soliciting

12   proxies "draw legal conclusions implicating itself in a breach of fiduciary duty from surrounding

13   facts and circumstances prior to a formal adjudication of the matter."  *Loudon v. Archer-Daniels-*

14   *Midland Co.*, 700 A.2d 135, 145 (Del. 1997).  Here, as in *Loudon*, Plaintiff would ask the Court

15   to extend the fiduciary duty of disclosure so as to require that KLA disclose in proxy statements

16   that certain director candidates supposedly were involved in wrongdoing at the Company, even

17   though there had been no adjudication of such facts (or even any litigation or hint of such an

18   issue).  In *Loudon*, for example, the underlying allegations were that directors of ADM had led

19   and approved a massive antitrust conspiracy, including price-fixing and other wrongdoing.  A

20   shareholder brought suit against ADM and its directors seeking to overturn an election of ADM

21   directors that had occurred after the price-fixing at ADM had come to light, and ADM had made

22   certain disclosures regarding the involvement of some directors.  Plaintiff alleged that the

23   disclosures in the proxy solicitation failed to implicate all responsible defendants, and thus that

24   the defendants had breached the fiduciary duty of disclosure.  *Id.* at 139-40.  In a definitive

25   opinion, the Delaware Supreme Court squarely rejected the possibility that any shareholder voting

26   rights or fiduciary duty claim could exist for failure to disclose wrongdoing that had not been

27   adjudicated:

28         Under Delaware law, **there could be no duty to disclose until such time as**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1  **these determinations were adjudicated**. Nowhere does the complaint allege

2  that, at the time the complaint was filed, an adjudication of these activities had

   occurred. Nevertheless, plaintiff's argument would have the ADM Board confess

3  to wrongdoing prior to any adjudication of guilt. This is precisely the situation the

   self-flagellation rule was designed to prevent.

4  *Loudon*, 700 A.2d at 145 (emphasis added).

5       The case at bar even more clearly requires application of the rule against "self-

6  flagellation." Here the FAC itself claims that allegations regarding stock option backdating

7  against KLA directors first came to light in mid-2006, and there is no claim that KLA failed to

8  disclose such allegations in connection with a director election or proxy solicitation occurring

9  after the allegations of backdating had come to light.

10           **3.    Plaintiff's Allegations of Harm from Non-disclosure Lack Merit.**

11      Plaintiff's non-disclosure claims fail because, with respect to the "Evergreen Provision,"

12  Plaintiff has not pled any requested shareholder action, and with respect to both the "Evergreen

13  Provision" and the Equity Incentive Plan, Plaintiff has not pled plausible causation between

14  omission and harm.

15      Plaintiff has not suffered harm as a result of any shareholder action in connection with

16  "approval" of the "Evergreen Provision". *Wolf v. Assaf*, 1998 WL 326662, *1 (Del. Ch. June 16,

17  1998) (pleading omission from proxy materials, or other voting mechanism, is a necessary

18  element of a cause of action for nondisclosure). Plaintiff alleges, impossibly, that he somehow

19  would have disallowed the automatic issuance of additional options under the "Evergreen

20  Provision" of the prior plan (the 1982 Stock Option Plan) in 2003 and 2004 but for the alleged

21  misconduct. Plaintiff's own allegations show this was not a matter on which Plaintiff was

22  entitled to vote. FAC ¶¶ 77, 83. The "Evergreen Provision" under the 1982 Stock Option Plan

23  "automatically" authorized the issuance each year of stock options covering an amount of shares

24  equal to 3% of KLA's outstanding shares of common stock as of the end of the prior fiscal year.

25  FAC ¶ 32. As the Complaint makes clear, however, the authorization of additional shares under

26  the Evergreen provision had no relationship to any supposed misstatements or breaches of duty

27  by defendants because, as Plaintiff alleges, it was "automatic." FAC ¶ 32.

28      Moreover, in order to state a claim for nondisclosure, a plaintiff must show "how the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

omission caused injury." *Wolf, supra*, 1998 WL 326662 at *1. Plaintiff's allegation of harm premised on shareholder approval of stock options grants is nonsensical. Plaintiff alleges dilution in the form of issuance of "an amount of shares equal to 3% of KLA-Tencor's shares of common stock." FAC ¶ 83. Plaintiff claims that *if* he had known about the backdating in the years after the purported backdating had ceased, he would not have approved KLA's adoption of its 2004 Equity Compensation Plan in 2004. Plaintiff does not allege, however, that adoption of the new Plan in 2004 was in any way necessary to or an essential link in bringing about the dilution of which he complains. Plaintiff alleges *no* factual connection between any wrongdoing in the form of purported backdating at KLA and either the 2004 Equity Compensation Plan, or the "Evergreen Provision" in the years 2003 and 2004. Plaintiff merely alleges that he and the putative class were injured as a result of the addition of "millions of shares added to the stock options plans." FAC, Prayer for Relief, ¶ 4.

### 4. Plaintiff's Fails to Plead Breach of the Duty of Disclosure with Specificity.

Plaintiff's breach of the fiduciary duty of disclosure also fails because he has not pled this claim with the requisite specificity. Plaintiff does not allege *which* directors and *what* allegedly misstated or omitted information (if any) was material to their election, or to any other shareholder action. Under Delaware law, which Plaintiff concedes governs this dispute, a plaintiff seeking to challenge proxy misstatements must plead "some basis for a court to infer that the alleged violations were material. For example, **a pleader must allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury**." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997) (complaint states no claim for breach of fiduciary duty of disclosure unless it specifically alleges the substance of and circumstances surrounding the alleged misstatement) (emphasis added). Plaintiff has not met this specificity requirement.

### C. All Three of Plaintiff's Causes of Action Should be Dismissed Because They are Each Derivative Under Delaware Law

As was the case with Plaintiff's original complaint, each of cause of action in the FAC is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

derivative under controlling Delaware law because each claim seeks to redress a core derivative harm, namely that Plaintiff's equity and voting interests were diluted as a result of the exercise of stock options.[7] *See* FAC ¶¶ 77, 83 and 88. *See Elster v. Am. Airlines, Inc.*, 100 A.2d 219, 222 (Del. Ch. 1953); *Cutaia*, 2007 WL 2215956, at *7. In determining whether a claim is direct or derivative, the Supreme Court of Delaware has stated that "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be **independent of any alleged injury to the corporation**." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (emphasis added). If a cause of action is premised on a harm that is not independent of an injury to the corporation then the cause of action should be dismissed. *See, e.g. Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, 2008 WL 878424 (N.D. Cal., 2008 March 28, 2008) (dismissing with prejudice claims that were held to be derivative because they failed to satisfy *Tooley*). Since the harm Plaintiff alleges is entirely derivative of harm to KLA, and any relief would ultimately benefit KLA, the action is derivative in nature and the claim must fail as a class action.

### 1.    Plaintiff Alleges No Harm Independent Of Harm To The Company.

Delaware courts recognize that claims alleging damage based upon equity dilution are *fundamentally derivative* because, among other things, such claims are based upon the alleged waste of corporate assets. *Elster*, 100 A.2d at 222; *Cutaia*, 2007 WL 2215956, at *7 ("Mere claims of dilution, without more, cannot convert a claim, traditionally understood as derivative, into a direct one.").

---

[7]    The internal affairs doctrine requires that the law of the state of incorporation, Delaware in this case (*see* FAC ¶ 17), applies when a lawsuit covers the subject matter of a corporation's dispute with shareholders. *Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982) ("[t]he internal affairs doctrine is a . . . principle which recognizes that only one State should have authority to regulate a corporation's internal affairs, [i.e.,] matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.") Accordingly, Delaware law applies to shareholder actions, such as this one, related to the issuance of stock options. *See also Beard v. Elster*, 120 A.2d 731, 735 (Del. Ch. 1960) ("The issuance of stock option plans by Delaware corporations involves the internal affairs of a Delaware corporation and is, therefore, controlled by the laws of Delaware."); *Elster v. Am. Airlines*, 100 A.2d 219 (Del. Ch. 1953) (applying Delaware law to claims related to issuance of stock options).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

Though Plaintiff strains to avoid using the term "dilution" after Judge Komar sustained KLA's demurrer on the grounds that Plaintiff's dilution claims are derivative, each cause of action in the FAC remains expressly tied to a theory of dilution.[8]  For example, Plaintiff alleges that if he had known KLA's "true financial condition," he would not have "allow[ed] the Evergreen Provision to go forward, adding to the restated 1982 Stock Option Plan, on July 1, 2003 and July 1, 2004, an amount of shares equal to 3% of KLA-Tencor's shares of common stock outstanding on June 30, 2002 and June 30, 2001, respectively."  FAC at ¶83.  Similarly, Plaintiff alleges that he was misled into "adopt[ing] [the] 2004 Equity Incentive Plan," a measure for which Plaintiff seeks cancellation of "millions of shares added to the stock options plans." FAC ¶ 83, Prayer for Relief, ¶ 4.  Whether the term "dilution" can be found in each cause of action does nothing to change the fact that each cause of action is predicated on the harm resulting from the issuance of "hundreds of thousands to millions of shares" of KLA shares.  *See* FAC ¶¶ 32, 42, 44, 77, 83 and 87.

Under Delaware law, "[a] claim for wrongful equity dilution is premised on the notion that the corporation, by issuing additional equity for insufficient consideration, made the complaining stockholder's stake less valuable."  *Cutaia*, 2007 WL 2215956 at *8 (holding that equity dilution claims are derivative).  This is precisely what Plaintiff has alleged in this action. FAC ¶¶ 62, 76-77, 83, 87-88.  Plaintiff can allege no harm independent of the corporation because nothing distinguishes Plaintiff's interests from those of shareholders at large or the company itself.  Claims for improper dilution have been widely recognized by Delware courts to be derivative, because "it falls upon all shareholders equally and falls only upon the individual shareholder in relation to his proportionate share of stock as a result of the direct injury being

---

[8]    Plaintiff has also added the "holding" claims discussed above to try and avoid a second ruling that his claims are derivative.  But his amended complaint, which still tethers each cause of action to alleged damages stemming from the dilutive effect of issuing additional shares, remains derivative in nature.  The instant FAC is nothing more than "a plaintiff creatively attempting to recast a derivative claim by alleging the same fundamental harm in a slightly different way."  *Feldman v. Cutaia*, 2007 WL 2215956, at *10 (Del .Ch. Aug. 1, 2007).  Rephrasing a claim traditionally understood as derivative to claim harm to a shareholder, however, "is disfavored by Delaware courts."  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1  done to the corporation." *Feldman*, 2007 WL 2215956 at *8.

2       Like the case at bar, the *Elster* action involved a complaint by an individual stockholder

3  seeking to rescind and cancel the issuance of stock options on terms he felt were detrimental to

4  the corporation and shareholders.  *See Elster*, 100 A.2d at 220.  After examining the complaint,

5  the Delaware Court of Chancery held that "[a]ny injury which plaintiff may receive by reason of

6  the dilution of his stock would be equally applicable to all the stockholders of the defendant, since

7  plaintiff holds such a small amount of stock in proportion to the stock outstanding that the control

8  or management of defendant would not be affected by the granting of these options…."  *Id.* at

9  222.  The same circumstances are presented here, because Plaintiff has not alleged that the stock

10  option grants were issued and exercised in such a way to wrest voting control from himself and

11  other public shareholders.  This case alleges identical harm to all shareholders, not the kind of

12  differential harm (such as dilution of minority shareholders or overriding their voting rights) that

13  might be addressed through a direct action.  The *Elster* court further explained that equity dilution

14  claims are predicated on harm done to the corporation:

15       Plaintiff claims that the value of his stock will deteriorate and that his
        proportionate share of the stock will be decreased as a result of the granting and
16      exercise of the stock options.  Assuming plaintiff's contention is correct, this
        would apply to the stock of all other shareholders as well.
17

18       …

19       Here the wrong of which Plaintiff complains is not a wrong inflicted upon him
        alone or a wrong affecting any particular right which is asserting – such as his
20      pre-emptive rights as a stockholder, rights involving the control of the
        corporation, or a wrong affecting the stockholders and not the corporation – but is
21      an indirect injury as a result of the harm done to the corporation.

22  *Id.* at 222-223.  Drawing an analogy to corporate overpayment, the Delaware Supreme Court

23  recently reaffirmed the essential holding of *Elster* and announced the standard for pleading a

24  direct action for shareholder dilution:

25       In the typical corporate overpayment case, a claim against the corporation's
        fiduciaries for redress is regarded as exclusively derivative, irrespective of
26      whether the currency or form of overpayment is cash or the corporation's stock.
        **Such claims are not normally regarded as direct, because any dilution in
27      value of the corporation's stock is merely the unavoidable result (from an
        accounting standpoint) of the reduction in the value of the entire corporate
28      entity, of which each share of equity represents an equal fraction.**  In the eyes

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

of the law, such equal "injury" to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually.

…

Because the shares representing the "overpayment" embody both economic value and voting power, the end result of [over-issuing shares to a controlling shareholder] is an improper transfer—or expropriation—of economic value and voting power from the public shareholders to the majority or controlling stockholder.  For that reason, the harm resulting from the overpayment is **not confined to equal dilution of the economic value and voting power of each of the corporation's outstanding shares**.

*Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006) (emphasis added). Thus, under *Gentile*, where (as here) a plaintiff alleges dilution of equity and voting rights that amounts to "equal dilution of the economic value and voting power of each of the corporation's outstanding shares," the claim is derivative in nature.

Crucially, Plaintiff does not allege that any controlling stockholder or group of stockholders gained from the transaction to the detriment of Plaintiff and other public shareholders, which is the only way he might construct a direct claim here.  Such an allegation would be essential to sustain a direct claim because "the harm *Gentile* … seek[s] to remedy **can only arise when a controlling stockholder, with sufficient power to manipulate the corporate process, engineers a dilutive transaction whereby the stockholder receives an exclusive benefit of increased equity ownership and voting power for inadequate consideration**." *Cutaia*, 2007 WL 2215956 at *8.  No such allegations are presented here, nor could there be, as this is not a case of misconduct by controlling shareholders to increase their own equity or voting power at the expense of other shareholders.

Not only is the narrow fact pattern that might support a direct cause of action under Delaware law absent here, but it *cannot* possibly be alleged, given that KLA is a large publicly traded corporation with diffuse ownership.  Plaintiff cannot allege that his interest in KLA was diluted to the benefit of a controlling shareholder because KLA, which has hundreds of millions of outstanding shares and thousands of shareholders, does not have any controlling shareholders.  The class Plaintiff purports to represent is defined as "thousands of KLA-Tencor stockholders of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1    record … located throughout the United States" who own "millions of KLA-Tencor stock."  FAC

2    ¶ 27(a).  But Plaintiff nowhere alleges that the defendants constitute a voting majority or anything

3    close to it, much less that the issuance of the stock options in question had any effect to increase

4    the voting power or equity of any controlling shareholders.  Rather, Plaintiff alleges that these

5    options were issued to all eligible employees and that only a small minority of the options were

6    granted to executive officers.  *See* FAC ¶¶ 33-46, 62 ("**retroactively priced for all employees**

7    **who received these grants** (less than 15% of these options were granted to executive officers)

8    (emphasis all original).

9        The proxy statements incorporated by reference in Plaintiff's own FAC plainly

10    demonstrate that there has been, and is no, controlling shareholder here.[9]  For example, KLA's

11    2004 Definitive Proxy discloses that "[a]ll directors and executive officers as a group" owned

12    only 3.16% of the shares of KLA.  *See* RJN, Ex. 5.  Additionally, the 1998 Definitive Proxy states

13    that "[a]ll directors and executive officers as a group" owned only 4.99% of the shares.  *See* RJN,

14    Ex. 6.  Thus, Plaintiff cannot show that KLA had a controlling shareholder, and under no

15    circumstances could he show that the defendants increased their voting power at the expense of

16    other shareholders through the option issuances in question.

17        A recent order in a stock options backdating case from the Northern District of California

18    confirms that the purported dilution related to alleged backdated options is derivative.  *See Vogel*

19

20    [9]    The contents of the Forms 10-K and Forms 14A Definitive Proxy Statements, filed with
          the SEC by KLA-Tencor Corporation, are cited in Plaintiffs' Complaint and thereby
21        incorporated by reference; Plaintiff incorporates KLA's proxy statemetns in his FAC ¶¶
          33-39, 41, 43-44, 46, 67-68.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th
22        Cir. 1996) ("[C]onsideration [of other portions of a document referenced in a complaint]
          is appropriate in the context of a motion to dismiss, and does not cover the motion into
23        one for summary judgment"); *In re Computer Sciences Corp. Derivative Litigation*, 244
          F.R.D. 580, 587 n.8 (C.D. Cal. 2007) ("The Court therefore takes judicial notice of [Forms
24        14-A Definitie Proxy Statements] under Federal Rule of Evidence 201, as they are: 1)
          public records filed with the SEC; 2) documents whose contents are alleged in Plaintiffs'
25        Complaint; or 3) documents that are "capable of accurate and ready determination by
          resort to sources whose accuracy cannot reasonably be questioned." As Plaintiff has
26        quoted from KLA Definitive Proxy Statements in attempting to state a claim against KLA,
          it is only fair that the entire contents of the proxies are introduced.
27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

**12(B)(6) MOT. TO DISMISS**
                                   Case No. CV-08-2249 CRB

1    *v. Jobs*, No. 06-5208 JF, 2007 WL 3461163 (N.D. Cal. Nov. 14, 2007).  In *Vogel*, a plaintiff

2    shareholder (represented by Plaintiff's same counsel) attempted to bring a class action alleging

3    that officers and directors of Apple, Inc. breached their fiduciary duties of disclosure by issuing

4    false and misleading proxies.  *Id.* at *2.  The District Court granted the 12(b)(6) motion filed by

5    defendants, which sought dismissal on the grounds the claims asserted by the class were

6    derivative under California law.  Finding that "California corporate law is functionally equivalent

7    to Delaware law," the District Court held that the claims asserted were derivative under *Tooley*

8    and *Gentile* because plaintiff did not allege that Apple Inc., a large publicly-traded corporation

9    like KLA, had a controlling shareholder.  *Id.* at *2-*3.  In the absence of a controlling

10   shareholder, the District Court held that the allegations amounted to nothing more than corporate

11   waste.

12         Lead Plaintiff's allegations properly are analyzed as claims of corporate
           overpayment that must be treated as derivative under the *Tooley* test.  The thrust
13         of the allegations is that the recipients of the backdated options were overpaid, in
           violation of Apple's stock options plans.  Such allegations necessarily involve an
14         injury to the corporation in that overpayment entails a reduction in corporate
           assets.
15
16   *Id.* at *3.  The same result should obtain here.

17              **2.    All Three of Plaintiff's Claims are Derivative Because They Each Seek
                        a Remedy, Rescission, that Benefits the Corporation at Large.**

18
19        Although the foregoing discussion should dispose of this issue, it bears noting that

20   Plaintiff's "rescission" claim further demonstrates the inherently derivative nature of his claims.

21   It is well-established that under Delaware law "[t]he elimination of [improperly issued] stock

22   restore[s] equal voting rights to all [a corporation's] stockholders and remedie[s] an arguable

23   breach of fiduciary duty by defendants. Those are ***corporate benefits***…"  *Bray v. Oklahoma Pub.*

24   *Co.*, Civ. A. No. 10793, 1991 WL 189136 (Del. Ch. Sept. 24, 1991)  (emphasis added).

25        Plaintiff seeks rescission and cancellation of options issued by KLA to its employees and

26   shares issued upon the exercise of such options.  *See* FAC Prayer for Relief, ¶ 4.  Plaintiff seeks

27   rescission of shares issued pursuant to the 1982 Stock Options Plan and the 2004 Equity Incentive

28   Plan.  Plaintiff alleges that the 1982 Stock Options Plan governed the issuance of stock options to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1    employees, and that the Board of Directors was responsible for its implementation.  *See* FAC ¶¶

2    31-32.  Similarly, the 2004 Equity Incentive Plan governs issuance of stock options to employees

3    and is administered by the Board of Directors.  *Id.*, ¶¶ 44-45.  Plaintiff does not allege that he or

4    any other shareholder had any rights or obligations under these plans and agreements.  Rather,

5    Plaintiff alleges that the backdating "scheme" caused options to be issued with a lower price than

6    the strike price.  *Id.*, ¶¶ 48-57.  Thus, if the plans and stock issued thereunder were rescinded, the

7    Company would be the recipient of the shares of stock issued under the stock options plan.  In

8    seeking to undo the issuance of options, "the wrong for which the complaint is made is the action

9    of the corporation in entering into the contract."  *Elster*, 845 A.2d at 222.  Like the instant matter,

10   *Elster* considered a prayer for relief asking a court to enjoin issuance of stock under a stock

11   option plan, and sought cancellation of stock already issued.  *Id.*  The relief benefits the

12   corporation because in alleging issuance of options at less-than market value, "the loss in each

13   instance is to the corporation and to the stockholders as a whole."  *Id.* at 223.

14                    **3.    Plaintiff Lacks Standing To Bring A Derivative Claim**

15           Delaware law unequivocally requires a Plaintiff to be a current shareholder of a company

16   in order to bring and maintain a derivative suit.  *Bradley v. First Interstate Bancorp*, 748 A.2d

17   913 (Del. 2000); *Ash v. McCall*, 2000 WL 1370341, at *12 (Del. Ch. Sept. 15. 2000) (describing

18   Delaware's continuous ownership standing requirement as "iron clad").  Plaintiff here admits that

19   he is no longer a shareholder of KLA.  *See* FAC ¶ 5 (alleging that Plaintiff owned shares of KLA

20   stock "between September 20, 2002 and September 27, 2006").  Accordingly, Plaintiff lacks

21   standing to maintain a derivative action, and this Court should not grant leave to amend to allow

22   Plaintiff to style his FAC as a derivative action.

23           **D.    Plaintiff's Section 1507 Claim Fails as a Matter of Law.**

24

25           Even were Plaintiff's California Corporations Code § 1507 not barred by SLUSA, and

26   derivative in nature, it fails for the additional reason that Section 1507 does not apply to

27   corporations not incorporated in California.  *In re Thortec Sec. Litig.*, 1989 WL 67429 (N.D. Cal.

28   Jan. 25, 1989).  In *Thortec*, the District Court granted dismissal of a Section 1507 claim brought

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21
1-SF/7701094.2

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

against a Delaware Corporation, like KLA, because the California Corporation Code specifies

that such statutes do not apply to corporations incorporated out-of-state unless they specify out-

of-state application:

> Defendants move to dismiss plaintiffs' cause of action for relief under California Corporations Code Section 1507. Defendants contend-and plaintiffs admit-that Thortec is a Delaware corporation, i.e., Thortec is incorporated in Delaware. Cal.Corp. Code Section 102 provides that the provisions of the Code apply only to corporation incorporated in California unless the particular provision states otherwise. A number of the provisions do state otherwise. See, e.g., Cal.Corp. Code Sections 1501(g), 1505(c), 1506, 1508 and 1510. Section 1507 does not state otherwise. Therefore, plaintiffs cause of action under Section 1507 of the Cal.Corp. Code is dismissed.

*Id.* at *5.

## IV.    **CONCLUSION**

For the foregoing reasons, KLA respectfully requests that this Court dismiss Plaintiff's

FAC without leave to amend.

Dated: May 7, 2008                              MORGAN, LEWIS & BOCKIUS LLP


By _____/s/_____
                    Matthew S. Weiler

Attorneys for Defendant KLA-Tencor Corporation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22
1-SF/7701094.2

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB