1  Patrice L. Bishop (182256)
   service@ssbla.com
2  STULL, STULL & BRODY
   10940 Wilshire Boulevard
3  Suite 2300
   Los Angeles, CA  90024
4  Tel:    (310) 209-2468
   Fax:    (310) 209-2087
5
   Jules Brody
6  Aaron L. Brody
   SSBNY@aol.com
7  STULL, STULL & BRODY
   6 East 45th Street
8  New York, NY 10017
   Tel:    (212) 687-7230
9  Fax:    (212) 490-2022

10 Counsel for Plaintiff

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 | CHRIS CRIMI, on Behalf of Himself and All | CASE NO. C 08-2249 CRB
   | Others Similarly Situated, |
16 | | **CLASS ACTION**
   |           Plaintiff, |
17 |      v. | **NOTICE OF MOTION AND MOTION
   |   | TO REMAND ACTION PURSUANT TO
18 | EDWARD W. BARNHOLT, H. RAYMOND | 28 U.S.C. § 1447 FOR LACK OF
   | BINGHAM, ROBERT T. BOND, RICHARD | SUBJECT MATTER JURISDICTION;
19 | J. ELKUS, JR., STEPHEN P. KAUFMAN, | MEMORANDUM OF POINTS AND
   | KENNETH LEVY, MICHAEL E. MARKS, | AUTHORITIES IN SUPPORT
20 | DEAN O. MORTON, KENNETH L. | THEREOF**
   | SCHROEDER, JON D. TOMPKINS, |
21 | RICHARD P. WALLACE, KLA-TENCOR | DATE:    September 12, 2008
   | CORPORATION, and DOES 1 through 25, | TIME:    10:00 a.m.
22 | | JUDGE:   Hon. Charles R. Breyer
   |          Defendants. | CTRM:    8, 19th Floor
23 | _____ |

24

25

26

27

28

   **NOTICE OF MOTION AND MOTION TO REMAND ACTION PURSUANT TO 28 U.S.C. § 1447 FOR
   LACK OF SUBJECT MATTER JURISDICTION; MPA IN SUPPORT THEREOF
   CASE NO. C 08-2249 CRB**                         C:\WordPerfect\KLA2\PLD\DirectComplaint\Remand Motion.wpd

**TABLE OF CONTENTS**

**PAGE NO.**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Standard Governing Removal and the District Court's
          Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    The Delaware Carve-Out Precludes Removal Under SLUSA . . . . . . . . . . . . . . . 8

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

**NOTICE OF MOTION AND MOTION TO REMAND ACTION PURSUANT TO 28 U.S.C. § 1447 FOR LACK OF SUBJECT MATTER JURISDICTION; MPA IN SUPPORT THEREOF**
**CASE NO. C 08-2249 CRB**                            C:\WordPerfect\KLA2\PLD\DirectComplaint\Remand Motion.wpd

**TABLE OF AUTHORITIES**

**PAGE NO.**

**FEDERAL CASES**

*City of Ann Arbor Employees' Retirement Sys. v. Gecht*,
2007 U.S. Dist. LEXIS 21928 (N.D. Cal. Mar. 9, 2007) .......................... 1, 10, 11

*Duncan v. Stuetzle*,
76 F.3d 1480 (9th Cir 1996) ................................................. 7

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) ................................................ 7

*Pace v. Bidzos*,
2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007) ......................... 2

*Superior Partners v. Chang*,
471 F. Supp. 2d 750 (S.D. Tex. 2007) ........................................ 11

**FEDERAL STATUTES**

15 U.S.C. § 78bb(f) ........................................................ 1, 8, 9

28 U.S.C. § 1447 .......................................................... 1, 7

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2008 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Charles R. Breyer, located at 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, plaintiff Chris Crimi will move this Court, pursuant to 28 U.S.C. § 1447, for an Order remanding this action to the Superior Court of California for the County of Santa Clara (the "Santa Clara Superior Court").

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and other files herein, and such other written or oral argument as may be permitted by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Whether this action should be remanded to the State Court pursuant to 28 U.S.C. § 1447 because it meets the requirements of an exception of the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(3)(A)(ii).

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Chris Crimi respectfully requests this Court remand this action to the Santa Clara Superior Court.

**I.   INTRODUCTION**

Plaintiff Crimi filed this action in the Santa Clara Superior Court. This Court should now remand this action back to the Santa Clara Superior Court because Defendant KLA-Tencor Corporation ("KLA-Tencor" or the "Company") cannot meet it burden of proof related to the removal of an action from state court to federal court based on subject matter jurisdiction.

Defendant's sole basis for removal to this Court was the erroneous contention that plaintiff's action is preempted by SLUSA, 15 U.S.C. § 78bb(f). However, this action is not subject to preemption pursuant to SLUSA because it meets the requirements of an exception of the statute, a clause commonly referred to as the "Delaware carve-out." Indeed, this District has already held that the Delaware carve-out applies to a case alleging similar claims to those alleged by plaintiff herein.

1  *See City of Ann Arbor Employees' Retirement Sys. v. Gecht*, 2007 U.S. Dist. LEXIS 21928, at *21 (N.D. Cal. Mar. 9, 2007); *Pace v. Bidzos*, 2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007).

In his Second Amended Complaint for Breaches of Fiduciary Duty (the "SAC") filed with the Santa Clara Superior Court, plaintiff alleges that defendants breached their fiduciary duty of disclosure under Delaware law by making misrepresentations and failing to disclose material facts regarding their improper backdating of stock options in order to secure shareholder approval for the issuance of additional KLA-Tencor shares through amended stock option plans. SLUSA's Delaware carve-out expressly exempts these type of breach of fiduciary duty claims. Accordingly, plaintiff respectfully requests that this Court remand this action back to plaintiff's chosen state court forum.

## II.  PROCEDURAL HISTORY

On September 4, 2007, plaintiff filed, with the Santa Clara Superior Court, this shareholders' action on behalf of all individuals who owned KLA-Tencor common stock between September 20, 2002 and September 27, 2006, except those who are part of the class of settling shareholders who purchased KLA-Tencor stock between February 13, 2003 and May 22, 2006 (the "Class"). KLA-Tencor, a publicly traded company whose common stock is traded on Nasdaq under the ticker symbol "KLAC," was formed in May 1997 pursuant to merger of KLA Instruments and Tencor Instruments. The Company supplies management solutions for the semiconductor and related microelectronics industries.

On November 14, 2007, KLA-Tencor filed their Motion to Stay plaintiff's Complaint with the Santa Clara Superior Court, and on January 8, 2008, filed a Demurrer to plaintiff's Complaint. After briefing and hearing on the Motion to Stay, on February 29, 2008, the Santa Clara Superior Court granted KLA-Tencor's Demurrer with leave to amend and denied the Motion to Stay without prejudice. Plaintiff filed his Amended Complaint on April 1, 2008. A copy of plaintiff's Amended Complaint is attached as Exhibit A to defendant's Notice of Removal of Action to the United States District Court for the Northern District of California (the "Notice of Removal").

On April 30, 2008, KLA-Tencor filed its Notice of Removal with this Court. The sole reason given for the removal is SLUSA. *See* Notice of Removal at 2:1-13.

On May 7, 2008, the Company filed a Motion to Dismiss the Amended Complaint (the "Motion to Dismiss"). Plaintiff initially filed his Motion to Remand on June 12, 2008. In addition, at the time he filed his Opposition to the Company's Motion to Dismiss, plaintiff requested the Court provide plaintiff leave to file an amended complaint and strike all pages of defendant's Motion to Dismiss in excess of the pages allowed in this Court's Standing Order. As a result of the requests made by plaintiff in conjunction with his Opposition to the Motion to Dismiss, the parties stipulated to withdraw both pending motions, allow plaintiff to file the SAC, and set a briefing schedule on refiling the motions.

### III. STATEMENT OF FACTS

In his SAC, plaintiff alleges that certain current and former officers and members of its Board of Directors (the "Board") breached their fiduciary duty of disclosure under Delaware law by making misrepresentations and failing to disclose material facts regarding their improper backdating of stock options in order to secure shareholder approval for millions of additional KLA-Tencor shares as a result of the: (i) the continuation of the Evergreen Provision (defined, *infra*); (ii) the adoption of the restated 1982 Stock Option Plan, and (iii) the adoption of the 2004 Equity Incentive Plan. ¶¶30-46.[1]

According to the Definitive Proxy filed with the Securities and Exchange Commission ("SEC") on October 6, 1997 (the "1997 Proxy"), options were granted to eligible employees through the 1982 Stock Option Plan and to directors through the Director Plan. The 1997 Proxy also stated, as did all the relevant proxies filed with the SEC thereafter, that the "exercise price of the options is the fair market value of Common Stock as of the date of grant." ¶30.

The 1982 Stock Option Plan was initially adopted by KLA Instruments Corporation in 1981, restated on November 18, 1996 (the date of the annual meeting pursuant to the 1996 Definitive Proxy filed with the SEC on October 11, 1996), and operative through October 18, 2004. ¶31. Pursuant to the terms of the 1982 Stock Option Plan, as restated, the "Plan shall be administered by the Board, including any duly appointed Committee of the Board." In its power as administrator of the plan, "the Board shall have the full and final power and authority, in its sole discretion . . . to

---

[1] All "¶__" mean and refer to the Amended Complaint.

determine the persons to whom, and the time or times at which, Options shall be granted and the number of shares of Stock to be subject to each Option . . . [and] . . . to determine the Fair Market Value of shares of Stock or other property." Moreover, the "exercise price for each Option shall be established in the sole discretion of the Board; provided, however, that [] no Option shall have an exercise price per share less than the Fair Market Value of a share of Stock on the effective date of grant of the Option." *Id*. The 1982 Stock Option Plan also had an "evergreen" automatic annual share replenishment feature which provided for, on the first day of the next fiscal year, the addition to the Plan an amount of shares equal to 3% of KLA-Tencor's outstanding shares of common stock on the last day of each fiscal year (the "Evergreen Provision"). ¶32.

According to the Definitive Proxy filed with the SEC on September 28, 1998 (the 1998 Proxy"), options were granted to eligible employees through the 1982 Stock Option Plan and to directors through the Director Plan. ¶33. The 1998 Proxy also requested shareholders approve the 1998 Outside Director Option Plan (the "1998 Director Plan") and to reserve for issuance 1,000,000 shares of the KLA-Tencor common stock for distribution to the directors under that plan. ¶34.

In addition, on November 10, 2000, the Board approved the 2000 Nonstatutory Stock Option Plan which provides for the issuance of stock options to employees and consultants, other than officers and directors, of the Company or any parent or subsidiary corporation . ¶37. On November 6, 2002, the Board amended the Nonstatutory Stock Option Plan. ¶40.

Pursuant to Evergreen Provision, on July 1, 2004, 5,903,603 shares of KLA-Tencor stock were added into the 1982 Stock Option Plan. ¶42.

The Definitive Proxy filed with the SEC on September 9, 2004, requested shareholders vote in favor of the director approved 2004 Equity Incentive Plan. The "2004 Equity Incentive Plan [was] developed to replace [the] 1982 Stock Option Plan and 2000 Nonstatutory Stock Option Plan and to supplement [the] 1998 Outside Director Option Plan." Under the terms of the 2004 Equity Incentive Plan, shareholders were requested to reserve 11,000,000 shares of KLA-Tencor common stock for issuance under the terms of the 2004 Equity Incentive Plan. In addition, pursuant to the terms of the 2004 Equity Incentive Plan, up to an additional 1,500,000 shares remaining for grant

under the 1982 Stock Option Plan and 2000 Nonstatutory Stock Option Plan would be transferred into the 2004 Equity Incentive Plan. ¶44.

The 2004 Equity Incentive Plan was to "be administered by our Board of Directors or a committee, which our Board of Directors may appoint from among its members (the 'Administrator')." The "Administrator has the authority to . . . select the persons to whom awards are to be granted." ¶46.

According to the Definitive Proxy filed with the SEC on October 13, 2005 (the "2005 Proxy"), options were granted to eligible employees through the 1982 Stock Option Plan to and to directors through the 1998 Director Plan. According to the 2005 Proxy, all "Options were granted at an exercise price equal to the fair market value of the Company's Common Stock.." ¶47.

However, as shareholders would eventually learn, and defendants would admit, defendants issued backdated stock options to all employees who received grants between from July 1, 1997 and June 30, 2002. It was not until May 22, 2006, that the investing public had any idea that the defendants were backdating options to themselves and other Company insiders. On that date, *The Wall Street Journal* published an article entitled "Five More Companies Show Questionable Options Patterns." The first company addressed by the article was KLA-Tencor. ¶48. The article stated, in part:

> In 2001, KLA-Tencor Corp., a leading semiconductor-equipment maker, granted its top executives, including Chairman Ken Levy, two batches of stock options. They arrived on unusually fortunate days for the executives: The first dated at the share price's first-half low; the second at its second-half low.
>
> In all, Mr. Levy received 10 grants from KLA-Tencor and its predecessor company between 1994 and 2001 -- all preceding quick runups in the share price; an analysis by The Wall Street Journal found the probability that that pattern occurred merely by chance is tiny -- around one in 20 million.
>
> Mr. Levy and company executives didn't return repeated phone and email messages

*Id*.

On May 24, 2006, the Company filed an 8-K with the SEC to announce that the Board had appointed a Special Committee of independent directors to "conduct an internal investigation relating

to past stock option grants, the timing of such grants and related accounting and documentation."

¶48. Over the next several months following its initial announcement, KLA-Tencor continued to issue press-releases and/or filings with the SEC which further outlined it and certain governmental entities' investigations into the alleged backdating. ¶¶49-55.

On October 16, 2006, the Company announced, in an 8-K filed with the SEC, that KLA-Tencor had "terminated, effective immediately, all aspects of its employment relationship with Kenneth L. Schroeder and any and all employment and/or service agreements between Mr. Schroeder and the Company." The Company also announced that its Vice President of the Company General Counsel, Stuart J. Nichols, had resigned. On December 27, 2006, the Company filed an 8-K announcing that defendant Tompkins had resigned from the Board on December 21, 2006. ¶57.

On January 29, 2007, KLA-Tencor filed its fiscal 2006 Form 10-K and restated previously filed financial results for fiscal years 2005, 2004, 2003 and 2002. In its filing, the Company, stated, *inter alia*, that:

> This Annual Report on Form 10-K for our fiscal year ended June 30, 2006 includes restatements of the following previously filed financial statements and data (and related disclosures): (1) our consolidated financial statements as of and for our fiscal years ended June 30, 2005 and 2004; (2) our selected consolidated financial data as of and for our fiscal years ended June 30, 2005, 2004, 2003 and 2002, and (3) our unaudited quarterly financial data for the first three quarters in our fiscal year ended June 30, 2006 and for all quarters in our fiscal year ended June 30, 2005. See Note 2, "Restatement of Consolidated Financial Statements," to Consolidated Financial Statements and Exhibit 99.1 for a detailed discussion of the effect of the restatements.
>
> As a result of an investigation of our historical stock option practices by a Special Committee of our Board of Directors (see Item 3—Legal Proceedings), we discovered that certain of our stock options, primarily those granted from July 1, 1997 to June 30, 2002, had been retroactively priced for all employees who received these grants (less than 15% of these options were granted to executive officers). This means that the option exercise price was not the market price of the option shares on the actual grant date of the option, but instead was a lower market price on an earlier date. The actual grant date—when the essential actions necessary to grant the option were completed, including the final determination of the number of shares to be granted to each employee and the exercise price—is the correct measurement date to determine the market price of the option shares under the accounting rules in effect at the time. More than 95% of the total in-the-money value (market price on the actual grant date minus exercise price) of all of our retroactively priced options was attributable to those granted from July 1, 1997 to June 30, 2002.

¶63.

As a result of the need to restate, KLA-Tencor recorded an additional pre-tax, non-cash, stock-based compensation expense of (a) $348 million for the periods July 1, 1994 to June 30, 2005 under APB Opinion No. 25 and (b) $22 million for the year ended June 30, 2006 under SFAS No. 123. *Id.*

## IV.  ARGUMENT

Defendant's removal of this litigation from the Superior Court to this United States District Court was improper. As outlined *infra*, KLA-Tencor cannot meet its burden to prove that removal from the state court was proper pursuant to SLUSA because plaintiff's claims are exempt from preemption under SLUSA's Delaware carve-out clause.

### A.  Standard Governing Removal and the District Court's Subject Matter Jurisdiction

Defendants have the burden of establishing that their removal of this action from the Santa Clara Superior Court was proper at the time it was removed. *Duncan*, 76 F.3d at 1485 (9th Cir 1996)*, citing Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994). As demonstrated *infra*, defendants' removal of this case was based solely on the erroneous subject matter jurisdiction grounds of SLUSA, which is not applicable to plaintiff's Complaint. Accordingly, defendants cannot meet their burden and this action must be remanded to state court.

Federal law dictates that this Court must narrowly construe the removal statute. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir 1996), *citing Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 85 L. Ed. 1214, 61 S. Ct. 868 (1941); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). Moreover, federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).

The general federal remand statute, 28 U.S.C. § 1447(c), provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Therefore, once this Court determines it does not have subject matter jurisdiction, it *must* remand the case back to the Santa Clara Superior Court.

Similarly, SLUSA provides that if, in considering a challenge to the removal from state court under SLUSA's provisions, the federal district court determines that an action is preserved under the Delaware carve-out, the federal court is *required* to remand the action back to state court. SLUSA specifically states that after an action has been removed, "if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court *shall remand* such action to such State court." 15 U.S.C. § 78bb(f)(3)(D) (emphasis added).

Because plaintiff's claims are exempt from the SLUSA preemption requirements pursuant to the Delaware carve-out clause, this action must be remanded to the Santa Clara Superior Court.

### B.    The Delaware Carve-Out Precludes Removal Under SLUSA

SLUSA specifically precludes removal of actions such as this one which are based on statutory or common law. This exception clause, the Delaware carve-out, is directly applicable to this action. Indeed, plaintiff's Amended Complaint alleges no claims for violations of Federal law.

Because plaintiff's claims meet the threshold showing that the allegations are based on the common law of KLA-Tencor's state of incorporation, the Delaware carve-out exempts from SLUSA this action which "involves" state law claims concerning:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (II) any recommendation, position or other communication with respect to the sale of securities of an issuer that –
>
>> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>>
>> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C § 78bb(f)(3)(A)(ii). As demonstrated *infra*, each of these enunciated sections of SLUSA applies to plaintiffs' allegations, requiring remand of this action to the Santa Clara Superior Court.[2]

---

[2]  It should be noted, however, that SLUSA requires remand when a plaintiff's complaint satisfies either 15 U.S.C § 78bb(f)(3)(A)(ii)(I) or 15 U.S.C § 78bb(f)(3)(A)(ii)(II). Satisfaction of both clauses is not necessary. *Id*.

1    First, as alleged in the Complaint and contrary to KLA-Tencor's assertions, this action does concern "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer[.]" 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). Specifically, this action "involves" the transfer of stock from KLA-Tencor (the "issuer") to the Company's stock option plans ("holders of equity securities of the issuer"), and thereby to certain of the Company's directors, officers and employees (also "holders of equity securities of the issuer"). Accordingly, 15 U.S.C. § 78bb(f)(3)(A)(ii)(I) applies to this action.

Second, as alleged in the Complaint and contrary to KLA-Tencor's assertions, this action also concerns "any recommendation, position or other communication with respect to the sale of securities of an issuer that [] is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and [] concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." 15 U.S.C. § 78bb(f)(3)(A)(ii)(II). In fact, plaintiff's Amended Complaint alleges that defendants breached their Delaware state law fiduciary duties by, *inter alia*, disseminating false and misleading proxy statements on October 6, 1997, September 28, 1998, October 15, 1999, October 6, 2000, September 28, 2001, September 20, 2002, September 23, 2003, September 9, 2004, October 13, 2005, and February 27, 2007, which, as more fully outlined in the Complaint, requested KLA-Tencor shareholders vote their shares in favor of: (i) a proposal allowing the Evergreen Provision to go forward; (ii) adding to the restated 1982 Stock Option Plan; and (iii) the adopting the 2004 Equity Incentive Plan. ¶¶30-46. It was from these additional shares that defendants and others at KLA-Tencor would receive their option grants.

Put more simply, the proxies were each a "recommendation" or "other communication," and these recommendations/communications were:

- "[W]ith respect to the sale of [KLA-Tencor] securities" into the stock option plans for defendants and other Company insiders;
- "Made on behalf by or on behalf of [KLA-Tencor and its affiliates, the directors,] to the holders of [KLA-Tencor] securities []; and"

- "[C]oncern[ed] decisions of such equity holders [of KLA-Tencor stock] with respect to voting their securities [ . . . and . . .] exercising [their] dissenters' or appraisal rights[,]" specifically with regards to whether or no the shareholders should: (i) allow the Evergreen Provision to go forward; (ii) add to the restated 1982 Stock Option Plan; and (iii) adopt the 2004 Equity Incentive Plan..

*See* 15 U.S.C. § 78bb(f)(3)(A)(ii)(II).

Indeed, this District has already held that a plaintiff alleging similar claims to those included in the Complaint are included under the Delaware carve-out. *See City of Ann Arbor Employees' Retirement Sys. v. Gecht*, 2007 U.S. Dist. LEXIS 21928 (N.D. Cal. Mar. 9, 2007). In *Ann Arbor*, the plaintiff "filed a derivative suit and class action against various officers and directors of [the defendant company] alleging, *inter alia*, that Defendants breached their fiduciary duty by failing to disclose in [the defendant company's . . .] proxy statement their practice of backdating stock options to their benefit and to the shareholders detriment." *Ann Arbor*, 2007 U.S. Dist LEXIS 21928, at *2." Moreover, in the *Ann Arbor* litigation, as in this action, the plaintiff also alleged that defendants' breached their fiduciary duties when they, with undisclosed knowledge of their backdating practices, requested an increase in the number of shares available under the defendant company's stock option plans. *Ann Arbor*, 2007 U.S. Dist LEXIS 21928, at *2-*3. The Court found that the defendant's "attempt to remove pursuant to SLUSA was not justified because Plaintiff's class action falls within the scope of the second Delaware carve-out." *Ann Arbor*, 2007 U.S. Dist LEXIS 21928, at *21. In so holding this District found that:

> [T]here is more than a "tangential" relationship between Defendants' allegedly fraudulent communications to shareholders and the prospective sale of securities at issue (*i.e.,* stock option grants). [footnote and citation omitted.] The authorization sought by the allegedly misleading proxy statement has a "transactional nexus" with any further option grants. [citation omitted.] The shareholder authorization was a necessary predicate to any further grants of backdated options, options contemplated by the complaint. [footnote omitted.] The complaint fairly implies the purpose of the misleading proxy solicitation was to facilitate further backdated options. There is thus clear causal connection between the proxy statement and the anticipated transaction.

\* \* \*

|   |   |
|---|---|
| 1 | Moreover, there is a high degree of proximity in the causal chain. Defendants would not need to make any further communications with shareholders before granting the options: no further shareholder approval is necessary once the authorization was obtained. The proxy statement was the last necessary "communication with respect to the sale of securities" which concerns "decision of such equity holders with respect to voting their securities." [citations omitted.] |

*Ann Arbor*, 2007 U.S. Dist LEXIS 21928, at *16-18.

Therefore, the Court concluded that "removal pursuant to SLUSA was not warranted[.]" *Ann Arbor*, 2007 U.S. Dist LEXIS 21928, at *21. Similarly, removal was not warranted in this action and this case should be remanded to the Santa Clara Superior Court. *See*, *e.g. Superior Partners v. Chang*, 471 F. Supp. 2d 750, 755 (S.D. Tex. 2007) (pursuant to the Delaware carve-out, remand is "proper" because alleged misrepresentations in proxy statement constitute a "'communication' made by the issuer" concerning shareholders' future vote).

## V.   CONCLUSION

For the foregoing reasons, plaintiff respectfully requests the Court remand this action to the Santa Clara Superior Court.

Dated: August 8, 2008

Patrice L. Bishop
STULL, STULL & BRODY

By:   /s/
Patrice L. Bishop
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA  90024
Tel:   (310) 209-2468
Fax:   (310) 209-2087

Jules Brody
Aaron L. Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:   (212) 687-7230
Fax:   (212) 490-2022

Counsel for Plaintiff