JOHN H. HEMANN (SBN: 165823)
JOSEPH E. FLOREN (SBN 168292)
THOMAS R. GREEN (SBN: 203480))
MATTHEW S. WEILER (SBN 236052)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail:   jhemann@morganlewis.com
              jfloren@morganlewis.com
              tgreen@morganlewis.com
              mweiler@morganlewis.com

Attorneys for KLA-Tencor Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRIS CRIMI, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD W. BARNHOLT, H. RAYMOND BINGHAM, ROBERT T. BOND, RICHARD J. ELKUS, JR., STEPHEN P. KAUFMAN, KENNETH LEVY, MICHAEL E. MARKS, DEAN O. MORTON, KENNETH L. SCHROEDER, JON D. TOMPKINS, RICHARD P. WALLACE, KLA-TENCOR CORPORATION, and DOES 1 through 25,<br><br>Defendants. | Case No. CV-08-2249 CRB<br><br>**DEFENDANT KLA'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:    September 12, 2008<br>TIME:    10:00 a.m.<br>DEP'T:   Courtroom 8<br><br>Hon. Charles R. Breyer |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...........................................................2

III. ARGUMENT .........................................................................................................................5

    A. SLUSA Bars Plaintiff's Two Remaining Causes of Action....................................5

    B. Plaintiff's Two Remaining Causes of Action Should be Dismissed Because They are Derivative Under Delaware Law................................................................7

        1. Plaintiff Alleges No Harm Independent Of Harm To The Company. .........8

        2. Plaintiff's Remaining Claims are Derivative Because They Each Seek a Remedy, Rescission, that Benefits the Corporation at Large. .......13

    C. Plaintiff Cannot State a Claim for Breach of Fiduciary Duty Because Defendants Owed No Duty to Disclose Historical Backdating that Had Not Been Adjudicated. .....................................................................................................14

    D. Plaintiff's Failure to Disclose Tort Lacks Sufficient Particularity. .......................15

IV. CONCLUSION ....................................................................................................................15

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5

i

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) .................................................................................................................5

*Bray v. Oklahoma Pub. Co.*,
  Civ. A. No. 10793, 1991 WL 189136 (Del. Ch. Sept. 24, 1991) ..............................................13

*Conley v. Gibson*,
  355 U.S. 41 (1957) .......................................................................................................................5

*De La Cruz v. Tormey*,
  582 F.2d 45 (9th Cir. 1978),
  *cert. denied,* 441 U.S. 965 (1979) ................................................................................................5

*Feldman v. Cutaia*,
  2007 WL 2215956 (Del .Ch. Aug. 1, 2007) ..........................................................................9, 11

*Gentile v. Rossette*,
  906 A.2d 91 (Del. 2006) ....................................................................................................... 10, 11

*In re Computer Sciences Corp. Derivative Litigation*,
  244 F.R.D. 580 (C.D. Cal. 2007) ...............................................................................................12

*In re Edward Jones Holders Litigation*,
  453 F. Supp. 2d 1210 (C.D. Cal. 2006) .......................................................................................6

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) .........................................................................................7

*Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*,
  2008 WL 878424 (N.D. Cal., 2008 March 28, 2008) .................................................................8

*Loudon v. Archer-Daniels-Midland Co.*,
  700 A.2d 135 (Del. 1997) ..................................................................................................... 14, 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006) ............................................................................................................. 5, 6, 7

*Vogel v. Jobs*,
  No. 06-5208 JF, 2007 WL 3461163 (N.D. Cal. Nov. 14, 2007) ........................................ 12, 13

*Zoren v. Genesis Energy, L.P.*,
  195 F. Supp. 2d 598 (D. Del. 2002) ........................................................................................6, 7

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5                                ii                        **12(B)(6) MOT. TO DISMISS**
                                                                        Case No. CV-08-2249 CRB

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Statutes**

15 U.S.C.
  § 77p(f)(3) .................................................................................................................................6
  § 78bb(f)(3)(a)(iii) .....................................................................................................................7
  § 78bb(f)(5)(B) ..........................................................................................................................6
  § 78bb(f)(5)(E) ..........................................................................................................................6

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),
  15 U.S.C. § 78bb ............................................................................................................... 1, 5, 6

**Rules**

Federal Rule of Evidence
  201 .........................................................................................................................................12

**Regulations**

H.R. Conf. Rep. No. 105-803 (1998) ............................................................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5

iii

**12(B)(6) MOT. TO DISMISS**
Case No. CV-08-2249 CRB

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 12, 2008, at 10:00 a.m., at 450 Golden Gate Ave., San Francisco, California, in Courtroom 8, Defendant KLA-Tencor Corporation ("KLA"), by and through its undersigned counsel, will, and hereby does, move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dismissal is required here because (1) all of Plaintiff's causes of action are barred, in whole or in part, by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb; (2); Plaintiff's claim for breach of fiduciary duty of disclose can only be maintained derivatively, if it can be maintained at all; and (3) Plaintiff has not, and cannot, plead that KLA officers and directors had a duty to disclose "backdating" of KLA stock options at the relevant time periods.

This motion is based on this notice of motion and motion, all of the papers on file with this Court, all of the papers that were originally filed in the Superior Court for the County of Santa Clara, and any argument that will be presented at the hearing.

**ISSUES TO BE DECIDED [N.D. L.R. 7-4(a)(3)]**

1. May Plaintiff maintain class claims that are preempted by SLUSA?
2. Can Plaintiff's claim for breach of fiduciary duty be maintained as a direct action?
3. Can Plaintiff plead a claim for breach of fiduciary duty for failing to disclose historic backdating?

Dated: August 8, 2008                    MORGAN, LEWIS & BOCKIUS LLP


By _____/s/_____
    Matthew S. Weiler

Attorneys for Defendant KLA-Tencor Corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC") states no claim against defendant KLA-Tencor Corporation ("KLA" or "the Company"). Apparently recognizing that he lacks standing to bring a derivative claim in the name of KLA,[1] Plaintiff seeks to fashion a direct cause of action against KLA for non-disclosure of historic backdating of stock options ("backdating").[2] Plaintiff's attempt to plead a sustainable direct cause of action against KLA fails for several reasons.

**First**, all of Plaintiff's claims are barred, in whole or in part, by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb. Plaintiff filed an amended complaint after the Santa Clara Superior Court sustained KLA's demurer to his original complaint. While his original complaint alleged causes of action for breach of fiduciary duty relating to voting rights, Plaintiff amended his complaint to allege "holder" claims—namely that misstatements and omissions harmed him and other shareholders because they held KLA shares when, had they known the true state of affairs at KLA, they would not have done so. All of Plaintiff's causes of action allege harm stemming from the holding of KLA shares. SAC ¶¶ 78-93. SLUSA, which mandates that class actions securities suits should only be brought in federal court under federal law, bars such "holder" claims.

**Second**, Plaintiff's claims fail because they still contain voting rights allegations, which are derivative in nature and cannot be brought as a direct action. Plaintiff fails to state a direct

---

[1] As Judge Komar already found, Plaintiff lacks standing under Delaware law to bring a derivative action because he no longer owns KLA stock. *Bradley v. First Interstate Bancorp*, 748 A.2d 913 (Del. 2000) (Delaware law unequivocally requires a Plaintiff to be a current shareholder of a company in order to bring and maintain a derivative suit). SAC ¶ 6.

[2] "Backdating," also termed "retroactive pricing," generally refers to the selection of exercise prices for stock options based not on the market price for the underlying stock on the date the option grant was completed or finally approved, but on a lower market price for the stock on an earlier date. The actual grant date, or "measurement date" for accounting purposes, is deemed to be the date that all essential actions necessary to complete the granting of the option are concluded, including identification of all grantees and final determination of the number of shares granted to each and the exercise price of the option. Options are said to be "backdated" or "retroactively priced" if the exercise price is set as of a date before the measurement date. *See generally* SAC ¶¶ 30, 66.

shareholder cause of action for breach of fiduciary duty because the fundamental harm alleged by Plaintiff's voting allegations is dilution, a harm that is plainly derivative under controlling Delaware law, and for which only the Company could have a potential right to recover.

**Third**, Plaintiff has not, and cannot, state a claim for the breach of fiduciary duty to disclose. To the extent that Plaintiff alleges a claim for breach of fiduciary duty based on activity that is not barred by SLUSA, such as an omission in connection with a request for shareholder action, Plaintiff's claim fails as a matter of law because he can allege no duty to disclose at the time he was asked to vote on the measures described in his SAC. Even to this day there has been no adjudication regarding the backdating Plaintiff alleges, and the allegations themselves did not come to light until May of 2006. With no adjudication of wrongdoing having occurred back when Plaintiff was allegedly "approving" certain stock option grants, no Defendant had a fiduciary duty to disclose the later alleged backdating to Plaintiff or any other shareholder. For Delaware law does not impose a duty of self-flagellation on officers and directors that requires them to admit to wrongdoing before such wrongdoing has been adjudicated, yet alone alleged.

Plaintiff, who filed this suit more than a year after countless "backdating" related cases had already been brought against KLA, has made a tortured attempt to state a cause of action that is not already addressed by the many direct and derivative class actions currently pending against KLA. There is nothing novel here, and the latest rendition of Plaintiff's complaint, his third attempt to state a cause of action, should be his last.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff seeks relief for the failure to disclose historic backdating at KLA. The SAC before this Court represents Plaintiff's third attempt to state a cause of action. Plaintiff's original complaint was filed on or about September 4, 2007, in Santa Clara County Superior Court. Judge Komar granted KLA's demurrer to Plaintiff's original complaint on the ground that Plaintiff's causes of action for breach of fiduciary duty and rescission could not be maintained as a direct action. KLA successfully argued that Plaintiff's allegation that Defendants deprived him of his right to make an informed vote regarding the issuance of additional shares, sought relief from dilution, a harm that is derivative under Delaware law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5                           2                    12(B)(6) MOT. TO DISMISS
                                                              Case No. CV-08-2249 CRB

In his First Amended Complaint ("FAC"), Plaintiff made limited changes to his original complaint in order to attempt to state a cause of action. First, without changing the substance of his allegations, he removed the term "dilution" from his complaint. Second, Plaintiff split his cause of action for breach of fiduciary duty into two purported causes of action for "Breach of Fiduciary Duty of Due Care and Loyalty" and "Breach of Fiduciary Duty of Candor and Full Disclosure." SAC ¶¶ 78-83, 84-93. Third, Plaintiff added a claim for "Violation of § 1507 of the California Corporations Code." Substantively, Plaintiff added "holder" claims, alleging that the proxy statements and Forms 10-K containing the alleged misrepresentations caused him to "hold" his shares of KLA when he otherwise would not have. *Id.*

As the "holder" allegations and California Corporations Code cause of action brought all of Plaintiff's claims within the reach of SLUSA, KLA removed this action on April 30, 2008. KLA then filed a motion to dismiss and Plaintiff filed a motion to remand. The parties withdrew these motions and stipulated to allow Plaintiff to file the SAC.

Plaintiff's SAC is virtually identical to his FAC, except that he has dropped his California Corporations Code cause of action. As before, Plaintiff alleges that he suffered compensatory damages by "holding" onto his KLA shares (when he otherwise would have sold them) had KLA not issued false or misleading proxy statements and Forms 10-K. SAC ¶ 81. In fact, now that Plaintiff has withdrawn his California Corporations Code cause of action, his "holder" allegations constitute the only difference between his SAC and his original complaint.

In each pleading Plaintiff alleges that Defendants improperly failed to disclose, in proxy statements and 10-K forms, the backdating of certain stock option grants from 1997 through June 2002, which resulted in the issuance of additional shares Plaintiff seeks to rescind. SAC ¶ 81, Prayer ¶ 4.[3] Specifically, Plaintiff alleges in his SAC that Defendants' misleading proxy statements and 10-K forms "deprived plaintiff and other members of the Class of the ability to make an informed decision concerning whether they should: (i) continue holding their shares … ;

---

[3] Among other relief, Plaintiff seeks the rescission of options issued *after* June 2002, during the putative class period from September 20, 2002 through September 27, 2006—relief that would cause the rescission of option grants not alleged to have been backdated. SAC, Prayer for Relief, ¶ 4.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5

3

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

(2) allow the Evergreen provision to go forward … [which created additional shares]; [and/or] (3) adopt of [sic] 2004 Equity Plan [which created additional shares]." *Id*. But though Plaintiff complains of misleading proxy statements and 10-K forms being filed from 1997 through 2007, Plaintiff admits that KLA only issued five 10-K forms and four proxy statements during the September 20, 2002 to September 27, 2006 class period during which Plaintiff or other class members, could "hold" or "vote" their shares. SAC ¶¶ 1, 6, 69, and 71. Plaintiff also admits that the alleged misleading statements all were made after the alleged backdating took place. *Id*. Moreover, though he complains of being denied the right to make an informed vote regarding the issuance of new shares, he admits that the Evergreen provision did not require a vote, as it automatically increased the number of shares available under the 1982 Stock Option Plan on an annual basis. *Id*., ¶ 33. The only "vote" Plaintiff alleges he possessed regarding the issuance of additional shares concerns the 2004 Proxy which "requested shareholders to vote in favor of the director approved 2004 Equity Incentive Plan." *Id*., ¶ 45.

Plaintiff's strained effort to state a non-derivative cause of action not barred by SLUSA derives from the fact that he is no longer a shareholder capable of stating a derivative claim and the reality that numerous other plaintiffs have beaten Mr. Crimi to the punch in alleging claims that may actually apply to him.[4]  SAC ¶ 6.

---

[4] There are currently multiple derivative and class action lawsuits based on the same alleged failure to disclose options backdating at KLA, asserted against the same defendants. The earlier plaintiffs filed cases in three different courts in mid-2006, on the heels of a May 22, 2006 *Wall Street Journal* article suggesting that KLA and several other companies had "backdated" stock options between 1994 and 2001. *See* SAC ¶ 48. Between May 22, 2006 and July 3, 2006, five shareholder derivative actions were filed in the United States District Court for the Northern District of California, San Jose Division, each of which asserted claims based on the same stock option backdating and related misstatements against nominal defendant KLA and current and former officers and directors of KLA, including all of the defendants in the instant case. These cases have been consolidated and are now pending under the caption *In re KLA-Tencor Corporation Shareholder Derivative Litigation*, Case. No. 06-03445 JW (N.D. Cal.). A derivative action is pending in the Santa Clara Superior Court under the caption *Rabin v. Barnholt, et al.*, No. 1-06-CV-064841. A hybrid derivative-class action that alleges both derivative claims and a shareholder class claim for breach of fiduciary duty is pending in the Delaware Chancery Court under the caption *Langford v. Barnholt, et al.*, No. 2295-N. Yet another consolidated shareholder class action, in which the plaintiffs assert federal securities causes of action, is pending in the United States District Court for the Northern District of California under the caption *In re KLA-Tencor Corporation Securities Litigation*, No. C 06-4065 CRB.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5                                    4                         12(B)(6) MOT. TO DISMISS
                                                                            Case No. CV-08-2249 CRB

## III. ARGUMENT

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in a complaint. Dismissal is appropriate under Rule 12(b)(6) where the complaint fails to plead a cognizable legal theory or sufficient facts supporting a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007) (rejecting the more liberal "no set of facts" and imposing an obligation on plaintiffs to plead facts sufficient to "raise a right to relief above the speculative level"); s*ee also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965 (1979). As shown below, Plaintiff's causes of action fail as a matter of law because they are barred by SLUSA, they are derivative in nature and defendants had no duty to disclose the alleged backdating when they issued the proxy statements and 10-K forms.

### A. SLUSA Bars Plaintiff's Two Remaining Causes of Action.

Plaintiff's two common law securities fraud causes of action must be assessed against the Congressional legislation passed in the later half of the 1990s. Congress first passed the Private Securities Litigation Reform Act of 1995 to raise the pleading standards for securities fraud suits. But after the Reform Act, plaintiffs began evading the pleading standards of the new federal law by redirecting their class claims to state courts under state law. By 1998, Congress concluded that plaintiffs were "circumvent[ing] the [Reform] Act's provisions… by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available." H.R. Conf. Rep. No. 105-803, at 14-15 (1998). Congress then enacted SLUSA in 1998 to "stem this 'shif[t] from Federal to State courts' and 'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of' the Reform Act...." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 82 (2006) (citations omitted).

SLUSA provides for removal and dismissal of any (1) "covered class action," (2) based on statutory or common law of any state, (3) alleging a misrepresentation or omission of a material act, or an act of deception, (4) "in connection with the purchase or sale of a covered security." *Id.* at 82-83 & n.7 (quoting 15 U.S.C. § 78bb(f)(1)); *Zoren v. Genesis Energy, L.P.,* 195 F. Supp. 2d

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5

5

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

598, 603 (D. Del. 2002). All of these criteria apply to Plaintiff's claims.

First, SLUSA defines a "covered class action" as a lawsuit in which damages are sought on behalf of more than 50 people. 15 U.S.C. § 78bb(f)(5)(B). Plaintiff pleads that the first cause of action is brought on behalf of a class that comes within this provision. SAC ¶ 1.

Second, Plaintiff's claims include causes of action predicated on breaches of fiduciary under California and Delaware common law. *Id.* ¶¶ 79.

Third, the SAC unambiguously bases its claim on alleged misrepresentations or omissions of material fact and alleged acts of deception. *Id.* ¶¶ 66, 69-73.

Fourth, the alleged misrepresentations and deceptive actions were allegedly made in connection with the purchase or sale of a covered security.[5] The Supreme Court in *Dabit* made it clear that "holder" claims such as Plaintiff's two causes of action, where a plaintiff alleges he held his stock because of actions or omissions, are "in connection with the purchase and sale of securities." *In re Edward Jones Holders Litigation*, 453 F. Supp. 2d 1210, 1216 (C.D. Cal. 2006) ("In light of the *Dabit* decision, it is clear to the Court that Plaintiffs' 'holder' claims arise 'in connection with the purchase or sale' of securities.").

Plaintiff's claims fall within *Dabit*'s holding. Plaintiff's First Cause of Action alleges that Defendants "failed to disclose KLA-Tencor's true financial condition or prospects" and that Defendants "unfairly deprived plaintiff and other members of the Class of the ability to make an informed decision concerning whether they should … <u>continue holding</u> their shares of KLA-Tencor stock." *Id.* ¶ 81 (emphasis added). Plaintiff's Second Cause of Action incorporates the "holder" allegation and states that he "and each member of the Class is suffering irreparable injury and damages." SAC ¶¶ 84, 88. The fact that Plaintiff merely held onto his shares as a result of Defendants' alleged material omissions, and did not necessarily enter into a securities transaction as a result of the alleged omissions, does not save Plaintiff from SLUSA. Under

---

[5] SLUSA defines "covered security" to include securities that are "traded nationally and listed on a regulated national exchange" (*see Dabit*, 547 U.S. at 83), such as the New York Stock Exchange, the American Stock Exchange or the Nasdaq National Market. *See* 15 U.S.C. § 77r(b), 77p(f)(3), 78bb(f)(5)(E); *see also* SAC ¶ 2 (alleging KLA's stock is traded on Nasdaq).

*Dabit,* the SLUSA preemption provision is satisfied if the alleged misrepresentations or deceptive acts simply "coincide" with *any* securities transaction, whether it involves Plaintiff or not. *See Dabit*, 547 U.S. at 85. Thus, SLUSA applies to Plaintiff's claimed misrepresentations whether he personally purchased shares in connection with the misrepresentations or not. *See also In re Salomon Smith Barney Mut. Fund Fees Litig.,* 441 F. Supp. 2d 579, 603-04 (S.D.N.Y. 2006) (SLUSA preempted state common law breach of fiduciary duty claims by holders of mutual fund shares against fund advisors based on alleged improper fees, payments of soft dollars, and unauthorized use of direct brokerage); *Zoren,* 195 F. Supp. 2d at 605 (SLUSA preempted state law breach of fiduciary duty claims based on proxy statements that allegedly misrepresented the company's restructuring plans even though restructuring did not involve purchase or sale of a security).

Plaintiff's remaining causes of action for breach of fiduciary duty are barred because they are self pled "holder" actions under SLUSA. SAC ¶ 81. Plaintiff may attempt to persuade the Court that his claims are actually predicated on being denied his right to an informed vote of his shares. And Plaintiff has plainly continued to plead voting allegations that have already been rejected by Judge Komar as derivative in order to try to fit his complaint into what some courts have labeled the Delaware "carve-out," which permits a narrow band of covered actions to proceed in state court. But nothing in the carve-out language of SLUSA states or suggests that "holder" claims fit the carve-out criteria. *See* 15 U.S.C. 78bb(f)(3)(a)(ii). Accordingly, all of Plaintiff's causes of action are preempted under SLUSA and should be dismissed as a matter of law.

### B. Plaintiff's Two Remaining Causes of Action Should be Dismissed Because They are Derivative Under Delaware Law.

As was the case with Plaintiff's original complaint, each of cause of action in the SAC is derivative under controlling Delaware law because each claim seeks to redress a core derivative harm, namely that Plaintiff's equity and voting interests were diluted as a result of the exercise of

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5

7

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

stock options.[6]  *See* SAC ¶¶ 81, Prayer ¶ 4.  *See Elster v. Am. Airlines, Inc.*, 100 A.2d 219, 222 (Del. Ch. 1953); *Cutaia*, 2007 WL 2215956, at *7.  In determining whether a claim is direct or derivative, the Supreme Court of Delaware has stated that "a court should look to the nature of the wrong and to whom the relief should go.  The stockholder's claimed direct injury must be **independent of any alleged injury to the corporation**."  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (emphasis added).  If a cause of action is premised on a harm that is not independent of an injury to the corporation then the cause of action should be dismissed.  *See, e.g. Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, 2008 WL 878424 (N.D. Cal., 2008 March 28, 2008) (dismissing with prejudice claims that were held to be derivative because they failed to satisfy *Tooley*).  Since the harm Plaintiff alleges is entirely derivative of harm to KLA, and any relief would ultimately benefit KLA, the action is derivative in nature and the claim must fail as a class action.

### 1. Plaintiff Alleges No Harm Independent Of Harm To The Company.

Delaware courts recognize that claims alleging damage based upon equity dilution are *fundamentally derivative* because, among other things, such claims are based upon the alleged waste of corporate assets.  *Elster*, 100 A.2d at 222; *Cutaia*, 2007 WL 2215956, at *7 ("Mere claims of dilution, without more, cannot convert a claim, traditionally understood as derivative, into a direct one.").

Though Plaintiff has strained to avoid using the term "dilution" ever since Judge Komar sustained KLA's demurrer on the grounds that Plaintiff's dilution claims are derivative, each

---

[6] The internal affairs doctrine requires that the law of the state of incorporation, Delaware in this case (*see* SAC ¶ 17), applies when a lawsuit covers the subject matter of a corporation's dispute with shareholders.  *Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982) ("[t]he internal affairs doctrine is a . . . principle which recognizes that only one State should have authority to regulate a corporation's internal affairs, [i.e.,] matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.")  Accordingly, Delaware law applies to shareholder actions, such as this one, related to the issuance of stock options.  *See also Beard v. Elster*, 120 A.2d 731, 735 (Del. Ch. 1960) ("The issuance of stock option plans by Delaware corporations involves the internal affairs of a Delaware corporation and is, therefore, controlled by the laws of Delaware."); *Elster v. Am. Airlines*, 100 A.2d 219 (Del. Ch. 1953) (applying Delaware law to claims related to issuance of stock options).

1   cause of action in the SAC remains expressly tied to a theory of dilution.[7] For example, Plaintiff

2   alleges that if he had known KLA's "true financial condition," he would not have "allow[ed] the

3   Evergreen Provision to go forward, adding to the restated 1982 Stock Option Plan, on July 1,

4   2003 and July 1, 2004, an amount of shares equal to 3% of KLA-Tencor's shares of common

5   stock outstanding on June 30, 2002 and June 30, 2001, respectively." SAC at ¶ 81. Similarly,

6   Plaintiff alleges that he was misled into "adopt[ing] [the] 2004 Equity Incentive Plan," a measure

7   for which Plaintiff seeks cancellation of "millions of shares added to the stock options plans."

8   SAC ¶ 81, Prayer for Relief, ¶ 4. Whether the term "dilution" can be found in each cause of

9   action does nothing to change the fact that each cause of action is predicated on the harm

10  resulting from the issuance of "hundreds of thousands to millions of shares" of KLA shares. *See*

11  SAC ¶¶ 33, 43, 45, and 81.

12          Under Delaware law, "[a] claim for wrongful equity dilution is premised on the notion

13  that the corporation, by issuing additional equity for insufficient consideration, made the

14  complaining stockholder's stake less valuable." *Cutaia*, 2007 WL 2215956 at *8 (holding that

15  equity dilution claims are derivative). This is precisely what Plaintiff has alleged in this action.

16  SAC ¶¶ 66, 70, 72, and 81. Plaintiff can allege no harm independent of harm to the corporation

17  because nothing distinguishes Plaintiff's interests from those of KLA shareholders at large or the

18  company itself. Delaware courts consistently find that any claim amounting to improper dilution

19  is derivative, because "it falls upon all shareholders equally and falls only upon the individual

20  shareholder in relation to his proportionate share of stock as a result of the direct injury being

21  done to the corporation." *See, e.g. Feldman*, 2007 WL 2215956 at *8.

22          Like the case at bar, the *Elster* action involved a complaint by an individual stockholder

23  seeking to rescind and cancel the issuance of stock options on terms he felt were detrimental to

---

[7] Plaintiff has also added the "holding" claims discussed above to try and avoid a second ruling that his claims are derivative. But his amended complaint, which still tethers each cause of action to alleged damages stemming from the dilutive effect of issuing additional shares, remains derivative in nature. The instant SAC is nothing more than "a plaintiff creatively attempting to recast a derivative claim by alleging the same fundamental harm in a slightly different way." *Feldman v. Cutaia*, 2007 WL 2215956, at *10 (Del .Ch. Aug. 1, 2007). Rephrasing a claim traditionally understood as derivative to claim harm to a shareholder, however, "is disfavored by Delaware courts." *Id.*

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5

9

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

the corporation and shareholders. *See Elster*, 100 A.2d at 220. After examining the complaint, the Delaware Court of Chancery held that "[a]ny injury which plaintiff may receive by reason of the dilution of his stock would be equally applicable to all the stockholders of the defendant, since plaintiff holds such a small amount of stock in proportion to the stock outstanding that the control or management of defendant would not be affected by the granting of these options…." *Id.* at 222. The same circumstances are presented here, because Plaintiff has not alleged that the stock option grants were issued and exercised in such a way to wrest voting control from himself and other public shareholders. This case alleges identical harm to all shareholders, not the kind of differential harm (such as dilution of minority shareholders or overriding their voting rights) that might be addressed through a direct action. The *Elster* court further explained that equity dilution claims are predicated on harm done to the corporation:

> Plaintiff claims that the value of his stock will deteriorate and that his proportionate share of the stock will be decreased as a result of the granting and exercise of the stock options. Assuming plaintiff's contention is correct, this would apply to the stock of all other shareholders as well.
>
> …
>
> Here the wrong of which Plaintiff complains is not a wrong inflicted upon him alone or a wrong affecting any particular right which is asserting – such as his pre-emptive rights as a stockholder, rights involving the control of the corporation, or a wrong affecting the stockholders and not the corporation – but is an indirect injury as a result of the harm done to the corporation.

*Id.* at 222-223. Drawing an analogy to corporate overpayment, the Delaware Supreme Court recently reaffirmed the essential holding of *Elster* and announced the standard for pleading a direct action for shareholder dilution:

> In the typical corporate overpayment case, a claim against the corporation's fiduciaries for redress is regarded as exclusively derivative, irrespective of whether the currency or form of overpayment is cash or the corporation's stock. **Such claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction**. In the eyes of the law, such equal "injury" to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually.

*Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006) (emphasis added). Thus, under *Gentile*, where, as here, a plaintiff alleges dilution of equity and voting rights that amounts to "equal

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5

10

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

dilution of the economic value and voting power of each of the corporation's outstanding shares," the claim is derivative in nature.

Crucially, Plaintiff does not allege that any controlling stockholder or group of stockholders gained from the transaction to the detriment of Plaintiff and other public shareholders, which is the only way he might construct a direct claim here. Such an allegation would be essential to sustain a direct claim because "the harm *Gentile* … seek[s] to remedy **can only arise when a controlling stockholder, with sufficient power to manipulate the corporate process, engineers a dilutive transaction whereby the stockholder receives an exclusive benefit of increased equity ownership and voting power for inadequate consideration**." *Cutaia*, 2007 WL 2215956 at *8. No such allegations are presented here, nor could there be, as this is not a case of misconduct by controlling shareholders to increase their own equity or voting power at the expense of other shareholders.

Not only is the narrow fact pattern that might support a direct cause of action under Delaware law absent here, but it *cannot* possibly be alleged, given that KLA is a large publicly traded corporation with diffuse ownership. Plaintiff cannot allege that his interest in KLA was diluted to the benefit of a controlling shareholder because KLA, which has hundreds of millions of outstanding shares and thousands of shareholders, does not have any controlling shareholders. The class Plaintiff purports to represent is defined as "thousands of KLA-Tencor stockholders of record … located throughout the United States" who own "millions of KLA-Tencor stock." SAC ¶ 27(a). But Plaintiff nowhere alleges that the defendants constitute a voting majority or anything close to it, much less that the issuance of the stock options in question had any effect to increase the voting power or equity of any controlling shareholders. Rather, Plaintiff alleges that KLA granted options to all eligible employees and that only a small minority of the options were granted to executive officers. *See* SAC ¶¶ 34-47, 66 ("**retroactively priced for all employees who received these grants** (less than 15% of these options were granted to executive officers) (emphasis all original).

The proxy statements incorporated by reference in Plaintiff's own SAC plainly

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB2/20607897.5

11

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

1  demonstrate that there has been, and is no, controlling shareholder here.[8] For example, KLA's

2  1998 Definitive Proxy states that "[a]ll directors and executive officers as a group" owned only

3  4.99% of the shares. *See* Request for Judicial Notice ("RJN"), Ex. 1. Additionally, the 2004

4  Definitive Proxy discloses that "[a]ll directors and executive officers as a group" owned only

5  3.16% of the shares of KLA. *See* RJN, Ex. 2. Thus, Plaintiff cannot show that KLA had a

6  controlling shareholder, and under no circumstances could he show that the defendants increased

7  their voting power at the expense of other shareholders through the option issuances in question.

8      A recent order in a stock options backdating case from the Northern District of California

9  confirms that the purported dilution related to alleged backdated options is derivative. *See Vogel*

10 *v. Jobs*, No. 06-5208 JF, 2007 WL 3461163 (N.D. Cal. Nov. 14, 2007). In *Vogel*, a plaintiff

11 shareholder (represented by Plaintiff's same counsel) attempted to bring a class action alleging

12 that officers and directors of Apple, Inc. breached their fiduciary duties of disclosure by issuing

13 false and misleading proxies. *Id.* at *2. The District Court granted the 12(b)(6) motion filed by

14 defendants, which sought dismissal on the grounds the claims asserted by the class were

15 derivative under California law. Finding that "California corporate law is functionally equivalent

16 to Delaware law," the District Court held that the claims asserted were derivative under *Tooley*

17 and *Gentile* because plaintiff did not allege that Apple Inc., a large publicly-traded corporation

18 like KLA, had a controlling shareholder. *Id.* at *2-*3. In the absence of a controlling

19 shareholder, the District Court held that the allegations amounted to nothing more than corporate

20 waste. *Id.* at *3. The same result should obtain here.

---

[8] The contents of the Forms 10-K and Forms 14A Definitive Proxy Statements, filed with the SEC by KLA-Tencor Corporation, are cited in Plaintiffs' Complaint and thereby incorporated by reference; Plaintiff incorporates KLA's proxy statements in his SAC ¶¶ 31-47, 66, 69-73. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) ("[C]onsideration [of other portions of a document referenced in a complaint] is appropriate in the context of a motion to dismiss, and does not cover the motion into one for summary judgment"); *In re Computer Sciences Corp. Derivative Litigation*, 244 F.R.D. 580, 587 n.8 (C.D. Cal. 2007) ("The Court therefore takes judicial notice of [Forms 14-A Definitie Proxy Statements] under Federal Rule of Evidence 201, as they are: 1) public records filed with the SEC; 2) documents whose contents are alleged in Plaintiffs' Complaint; or 3) documents that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As Plaintiff has quoted from KLA Definitive Proxy Statements in attempting to state a claim against KLA, it is only fair that the entire contents of the proxies are introduced.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5         12         12(B)(6) MOT. TO DISMISS
                                  Case No. CV-08-2249 CRB

### 2. Plaintiff's Remaining Claims are Derivative Because They Each Seek a Remedy, Rescission, that Benefits the Corporation at Large.

Although the foregoing discussion should dispose of this issue, it bears noting that Plaintiff's "rescission" claim further demonstrates the inherently derivative nature of his claims. It is well-established that under Delaware law "[t]he elimination of [improperly issued] stock restore[s] equal voting rights to all [a corporation's] stockholders and remedie[s] an arguable breach of fiduciary duty by defendants. Those are **corporate benefits**…" *Bray v. Oklahoma Pub. Co.*, Civ. A. No. 10793, 1991 WL 189136 (Del. Ch. Sept. 24, 1991) (emphasis added).

Plaintiff seeks rescission and cancellation of options issued by KLA to its employees and shares issued upon the exercise of such options. *See* SAC Prayer for Relief, ¶ 4. Plaintiff seeks rescission of shares issued pursuant to the 1982 Stock Options Plan and the 2004 Equity Incentive Plan. Plaintiff alleges that the 1982 Stock Options Plan governed the issuance of stock options to employees, and that the Board of Directors bore responsibility for its implementation. *See* SAC ¶¶ 32-33. Similarly, Plaintiff alleges that the KLA Board of Directors administers the 2004 Equity Incentive Plan which governs issuance of stock options to employees. *Id.*, ¶¶ 45-46. Plaintiff does not allege that he or any other shareholder had any rights or obligations under these plans and agreements. Rather, Plaintiff alleges that the backdating "scheme" caused options to be issued with a lower price than the fair market price. *Id.*, ¶¶ 48-66. If this Court rescinds the plans and stock issued thereunder, the Company would receive the shares of stock issued pursuant to the stock options plan. In seeking to undo the issuance of options, "the wrong for which the complaint is made is the action of the corporation in entering into the contract." *Elster*, 845 A.2d at 222. Like the instant matter, *Elster* considered a prayer for relief asking a court to enjoin issuance of stock under a stock option plan, and sought cancellation of stock already issued. *Id.* The relief benefits the corporation because in alleging issuance of options at less-than market value, "the loss in each instance is to the corporation and to the stockholders as a whole." *Id.* at 223.

### C. Plaintiff Cannot State a Claim for Breach of Fiduciary Duty Because Defendants Owed No Duty to Disclose Historical Backdating that Had Not Been Adjudicated.

Plaintiff's fiduciary duty claims should also be dismissed because Defendants **owed no duty** to disclose historical backdating prior to an adjudication of guilt. Directors standing for election are not required to "confess to wrongdoing prior to any adjudication of guilt," nor must any defendant in soliciting proxies "draw legal conclusions implicating itself in a breach of fiduciary duty from surrounding facts and circumstances prior to a formal adjudication of the matter." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 145 (Del. 1997). Here, as in *Loudon*, Plaintiff would ask the Court to extend the fiduciary duty of disclosure so as to require that KLA disclose in proxy statements that certain director candidates supposedly were involved in wrongdoing at the Company, even though there had been no adjudication of such facts (or even any litigation or hint of such an issue). In *Loudon*, for example, the underlying allegations were that directors of ADM had led and approved a massive antitrust conspiracy, including price-fixing and other wrongdoing. A shareholder brought suit against ADM and its directors seeking to overturn an election of ADM directors that had occurred after the price-fixing at ADM had come to light, and ADM had made certain disclosures regarding the involvement of some directors. Plaintiff alleged that the disclosures in the proxy solicitation failed to implicate all responsible defendants, and thus that the defendants had breached the fiduciary duty of disclosure. *Id.* at 139-40. In a definitive opinion, the Delaware Supreme Court squarely rejected the possibility that any shareholder voting rights or fiduciary duty claim could exist for failure to disclose wrongdoing that had not been adjudicated:

> Under Delaware law, **there could be no duty to disclose until such time as these determinations were adjudicated**. Nowhere does the complaint allege that, at the time the complaint was filed, an adjudication of these activities had occurred. Nevertheless, plaintiff's argument would have the ADM Board confess to wrongdoing prior to any adjudication of guilt. This is precisely the situation the self-flagellation rule was designed to prevent.

*Loudon*, 700 A.2d at 145 (emphasis added).

The case at bar even more clearly requires application of the rule against "self-flagellation." Here the SAC makes clear that allegations regarding possible stock option

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5

14

12(B)(6) MOT. TO DISMISS
Case No. CV-08-2249 CRB

backdating at KLA first came to light in mid-2006, and there is no claim that KLA failed to disclose such allegations in connection with a director election or proxy solicitation occurring after the allegations of backdating had come to light.  On the contrary, the SAC is replete with admissions demonstrating the expediency with which KLA undertook an investigation of the alleged backdating and reported its findings to the public at large.

### D.  Plaintiff's Failure to Disclose Tort Lacks Sufficient Particularity.

Plaintiff's breach of the fiduciary duty of disclosure also fails because he has not pled this claim with the requisite specificity.  Plaintiff does not allege *which* directors and *what* allegedly misstated or omitted information (if any) was material to their election, or to any other shareholder action.  Under Delaware law, which Plaintiff concedes governs this dispute, a plaintiff seeking to challenge proxy misstatements must plead "some basis for a court to infer that the alleged violations were material.  For example, **a pleader must allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury**."  *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997) (complaint states no claim for breach of fiduciary duty of disclosure unless it specifically alleges the substance of and circumstances surrounding the alleged misstatement) (emphasis added).  Plaintiff's SAC falls well short of meeting this specificity requirement.

## IV.  CONCLUSION

For the foregoing reasons, KLA respectfully requests that this Court dismiss Plaintiff's SAC without leave to amend.

Dated: August 8, 2008                                   MORGAN, LEWIS & BOCKIUS LLP

                                                        By _____/s/_____
                                                              Matthew S. Weiler

                                                        Attorneys for Defendant KLA-Tencor Corporation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20607897.5                                15                    12(B)(6) MOT. TO DISMISS
                                                                    Case No. CV-08-2249 CRB