Patrice L. Bishop (182256)
service@ssbla.com
STULL, STULL & BRODY
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA  90024
Tel:    (310) 209-2468
Fax:    (310) 209-2087

Jules Brody
Aaron L. Brody
SSBNY@aol.com
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:    (212) 687-7230
Fax:    (212) 490-2022

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS CRIMI, on Behalf of Himself and All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>EDWARD W. BARNHOLT, H. RAYMOND BINGHAM, ROBERT T. BOND, RICHARD J. ELKUS, JR., STEPHEN P. KAUFMAN, KENNETH LEVY, MICHAEL E. MARKS, DEAN O. MORTON, KENNETH L. SCHROEDER, JON D. TOMPKINS, RICHARD P. WALLACE, KLA-TENCOR CORPORATION, and DOES 1 through 25,<br><br>              Defendants. | CASE NO. C 08-2249 CRB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KLA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>**DATE:**    September 12, 2008<br>**TIME:**    10:00 a.m.<br>**CTRM:**    8, 19th Floor<br>**JUDGE:**    Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

**PAGE NO.**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.     STATEMENT OF ISSUES TO BE DECIDED [Civil L.R. 7-2(a)(3)] . . . . . . . . . . . . . . . . . 1

II.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Plaintiff's Claims are not Subject to SLUSA's Preemption . . . . . . . . . . . . . . . . . . 7

            1.     The First Prong of the Delaware Carve-Out . . . . . . . . . . . . . . . . . . . . . . . 7

            2.     The Second Prong of the Delaware Carve-Out . . . . . . . . . . . . . . . . . . . . 9

      B.    Plaintiff's Complaint is Properly Pled as a Direct Action . . . . . . . . . . . . . . . . . . . 10

            1.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.     The Standard for Distinguishing that Plaintiff's Claims are Direct . . . . . . 10

            3.     Plaintiff's Claims are Direct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    If This Court Denies Plaintiff's Motion to Remand and Grants
           Defendant's Motion to Dismiss, Leave to Amend is Appropriate . . . . . . . . . . . . . 11

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

# TABLE OF AUTHORITIES

**PAGE NO.**

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Broudo v Dura Pharms., Inc.*,
339 F.3d 933 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Ann Arbor Employees' Retirement Sys. v. Gecht*,
2007 U.S. Dist. LEXIS 21928 (N.D. Cal. Mar. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*DCD Programs. Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Eminence Capital*,
316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Erickson v. Pardus*,
127 S. Ct. 2197 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Falkowski v. Imation Corp.*,
309 F.3d 1123 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Foman v. Davis*,
37 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grabinski v. Nat'l Union Fire Ins. Co. Of Pittsburgh*,
255 Fed. Appx. 633, 2008 U.S. App. LEXIS 2317 (9th Cir. Jan. 29, 2008) . . . . . . . . . . . . . . 10

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*,
530 U.S. 1 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Indiana Elect'l. Workers Pension Trust Fund, IBEW v. Millard*,
2007 U.S. Dist. LEXIS 54203 (S.D.N.Y. July 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lamie v. United States Tr.*,
540 U.S. 526 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pace v. Bidzos*,
2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Parks School of Business, Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ii

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

1

**TABLE OF AUTHORITIES**

2
                                                       **PAGE NO.**

3
**STATE CASES**

*StorMedia Inc. v. Superior Court*,
20 Cal. 4th 449 (Cal. 1999) ................................................. 1

*Thorpe v. CERBCO, Inc.*,
1993 Del. Ch. LEXIS 16 (Del. Ch. Jan. 26, 1993) ................................ 11

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ................................................. 10

**DOCKETED CASES**

*Huang v. Reyes, et al.*,
Case No. C 07-5950 CRB, Docket No. 28 (N.D. Cal. Mar. 6, 2008) ................ 7, 9

iii

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

Plaintiff Chris Crimi ("Plaintiff"), hereby opposes defendant KLA-Tencor Corporation's ("KLA" or the "Company") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I. STATEMENT OF ISSUES TO BE DECIDED [Civil L.R. 7-2(a)(3)]

1. Whether this action meets the requirements of an exception of the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(3)(A)(ii), commonly referred to as the "Delaware carve-out." If this Court holds yes, no further issues need to be decided at this case should be remanded to the California Superior Court for the County of Santa Clara.

2. If the Court holds no to Issue No. 1, *supra*, the appropriate standard of review under Fed. R. Civ. P. 8(a)(2).

3. If the Court holds no to Issue No. 1, *supra*, whether this action is properly pled as a direct action.

4. If the Court holds no to Issue No. 1, *supra*, and dismisses this case for any reason, whether leave to amend is appropriate.

## II. INTRODUCTION

Defendants interfered with plaintiff's right to vote by breaching their fiduciary duties of due care, loyalty, candor and full disclosure. Because only a shareholder can vote on an issue presented in a proxy, the shareholder, and not the corporation he invested in, is owed a fiduciary duty with regards to that vote. When a company and its directors, such as defendants herein, issues false and misleading information in a definitive proxy it issued to its shareholders and filed with the SEC,

---

[1] Plaintiff also objects to KLA's request for judicial notice to the extent that KLA requests the Court take notice of the truth of the matters asserted in KLA's filings with the Securities and Exchange Commission ("SEC") filed in support of the Company's Motion. *See*, *e.g.*, *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *StorMedia Inc. v. Superior Court*, 20 Cal. 4th 449, 457 (Cal. 1999). Judicial notice of KLA's Securities and Exchange Commission ("SEC") filings and the pleadings should be limited to the Court taking notice of the document existing, "the truthfulness and proper interpretation of the document are disputable." *StorMedia*, 20 Cal. 4th at 457. Moreover, the complaint must be construed in the light most favorable to plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

1
**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

1  that company and those directors interfere with its shareholders' vote.  This is especially heinous
2  when a company and its directors, such as defendants herein, are asking a shareholder to vote his
3  proxy in favor of issues which directly affect the directors: *i.e.* the right to be appointed a director
4  based on false and misleading information concerning options the defendants granted to themselves
5  and other Company insiders.  Because only a shareholder can hold the right to vote, any favorable
6  measure remedying defendants' interference must flow to that shareholder, and not the Company.

7        In this case, defendants, as outlined *infra*, have admitted that they issued backdated stock
8  options to all employees who received grants between from July 1, 1997 and June 30, 2002.  ¶62.[2]
9  Thereafter, defendants continued to request that shareholders, on a yearly basis, vote defendants
10 into the same positions of power which allowed the defendants to issue backdated stock options in
11 the first place.  Each time defendants issued and filed, with the SEC, one of their definitive proxies,
12 requesting the appointment of themselves as directors and the issuance of more shares as incentive
13 for defendants to retain their possession of power, they interfered with plaintiff's, and others
14 situated similarly to him, right to vote based on accurate information.  Indeed, each time defendants
15 issued another definitive proxy, they violated the fiduciary duty of disclosure they owed to each of
16 the Company's shareholders.

17 **III.  PROCEDURAL HISTORY**

18       On September 4, 2007, plaintiff filed, with the Santa Clara Superior Court, this
19 shareholders' action on behalf of all individuals who owned KLA common stock between
20 September 20, 2002 and September 27, 2006, except those who are part of the class of settling
21 shareholders who purchased KLA stock between February 13, 2003 and May 22, 2006 (the
22 "Class").  KLA, a publicly traded company whose common stock is traded on Nasdaq under the
23 ticker symbol "KLAC," was formed in May 1997 pursuant to merger of KLA Instruments and
24 Tencor Instruments.  The Company supplies management solutions for the semiconductor and
25 related microelectronics industries.

26

---

28    [2] All "¶" references are to plaintiff's Second Amended Complaint for Breaches of Fiduciary Duty (the "SAC").

2
**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

1    On November 14, 2007, KLA filed their Motion to Stay plaintiff's Complaint with the Santa Clara Superior Court, and on January 8, 2008, filed a Demurrer to plaintiff's Complaint. After briefing and hearing on the Motion to Stay, on February 29, 2008, the Santa Clara Superior Court granted KLA's Demurrer with leave to amend and denied the Motion to Stay without prejudice. Plaintiff filed his Amended Complaint on April 1, 2008.

On April 30, 2008, KLA filed its Notice of Removal with this Court. The sole reason given for the removal is SLUSA. *See* Notice of Removal at 2:1-13. Plaintiff initially filed his Motion to Remand on June 12, 2008. However, as a result of the fact the Motion to Dismiss filed by KLA on May 7, 2008 was in violation of the page limit provided for in this Court's Standing Order, the parties stipulated to withdraw both plaintiff's initial motion to remand and defendant's initial motion to dismiss, allow plaintiff to file the SAC, and set a briefing schedule on refiling the motions on August 8, 2008.

## IV.    STATEMENT OF FACTS

In his SAC, plaintiff alleges that certain current and former officers and members of its Board of Directors (the "Board") breached their fiduciary duty of disclosure under Delaware law by making misrepresentations and failing to disclose material facts regarding their improper backdating of stock options in order to secure shareholder approval for millions of additional KLA shares as a result of the: (i) the continuation of the Evergreen Provision (defined, *infra*); (ii) the adoption of the restated 1982 Stock Option Plan, and (iii) the adoption of the 2004 Equity Incentive Plan. ¶¶30-46.

According to the Definitive Proxy filed with the SEC on October 6, 1997 (the "1997 Proxy"), options were granted to eligible employees through the 1982 Stock Option Plan and to directors through the Director Plan. The 1997 Proxy also stated, as did all the relevant proxies filed with the SEC thereafter, that the "exercise price of the options is the fair market value of Common Stock as of the date of grant." ¶30.

The 1982 Stock Option Plan was initially adopted by KLA Instruments Corporation in 1981, restated on November 18, 1996 (the date of the annual meeting pursuant to the 1996 Definitive Proxy filed with the SEC on October 11, 1996), and operative through October 18, 2004. ¶31.

3

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS
CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

1   Pursuant to the terms of the 1982 Stock Option Plan, as restated, the "Plan shall be administered by
2   the Board, including any duly appointed Committee of the Board." In its power as administrator of
3   the plan, "the Board shall have the full and final power and authority, in its sole discretion . . . to
4   determine the persons to whom, and the time or times at which, Options shall be granted and the
5   number of shares of Stock to be subject to each Option . . . [and] . . . to determine the Fair Market
6   Value of shares of Stock or other property."  Moreover, the "exercise price for each Option shall be
7   established in the sole discretion of the Board; provided, however, that [] no Option shall have an
8   exercise price per share less than the Fair Market Value of a share of Stock on the effective date of
9   grant of the Option." *Id*. The 1982 Stock Option Plan also had an "evergreen" automatic annual
10  share replenishment feature which provided for, on the first day of the next fiscal year, the addition
11  to the Plan an amount of shares equal to 3% of KLA's outstanding shares of common stock on the
12  last day of each fiscal year (the "Evergreen Provision"). ¶32.

13          According to the Definitive Proxy filed with the SEC on September 28, 1998 (the 1998
14  Proxy"), options were granted to eligible employees through the 1982 Stock Option Plan and to
15  directors through the Director Plan. ¶33. The 1998 Proxy also requested shareholders approve the
16  1998 Outside Director Option Plan (the "1998 Director Plan") and reserve for issuance 1,000,000
17  shares of the KLA common stock for distribution to the directors under that plan. ¶34.

18          In addition, on November 10, 2000, the Board approved the 2000 Nonstatutory Stock
19  Option Plan which provides for the issuance of stock options to employees and consultants, other
20  than officers and directors, of the Company or any parent or subsidiary corporation . ¶37. On
21  November 6, 2002, the Board amended the Nonstatutory Stock Option Plan. ¶40.

22          Pursuant to Evergreen Provision, on July 1, 2004, 5,903,603 shares of KLA stock were
23  added into the 1982 Stock Option Plan. ¶42.

24          The Definitive Proxy filed with the SEC on September 9, 2004, requested shareholders vote
25  in favor of the director approved 2004 Equity Incentive Plan. The "2004 Equity Incentive Plan
26  [was] developed to replace [the] 1982 Stock Option Plan and 2000 Nonstatutory Stock Option Plan
27  and to supplement [the] 1998 Outside Director Option Plan." Under the terms of the 2004 Equity
28  Incentive Plan, shareholders were requested to reserve 11,000,000 shares of KLA common stock for

issuance under the terms of the 2004 Equity Incentive Plan.  In addition, pursuant to the terms of the 2004 Equity Incentive Plan, up to an additional 1,500,000 shares remaining for grant under the 1982 Stock Option Plan and 2000 Nonstatutory Stock Option Plan would be transferred into the 2004 Equity Incentive Plan.  ¶44.

The 2004 Equity Incentive Plan was to "be administered by our Board of Directors or a committee, which our Board of Directors may appoint from among its members (the 'Administrator')."  The "Administrator has the authority to . . . select the persons to whom awards are to be granted." ¶46.

According to the Definitive Proxy filed with the SEC on October 13,  2005 (the "2005 Proxy"), options were granted to eligible employees through the 1982 Stock Option Plan to and to directors through the 1998 Director Plan. According to the 2005 Proxy, all "Options were granted at an exercise price equal to the fair market value of the Company's Common Stock.." ¶47.

However, as shareholders would eventually learn, and defendants would admit, defendants issued backdated stock options to all employees who received grants between from July 1, 1997 and June 30, 2002.  It was not until May 22, 2006, that the investing public had any idea that the defendants were backdating options to themselves and other Company insiders.  On that date, *The Wall Street Journal* published an article entitled "Five More Companies Show Questionable Options Patterns."  The first company addressed by the article was KLA. ¶48.  The article stated, in part:

> In 2001,  KLA-Tencor Corp., a leading semiconductor-equipment maker, granted its top executives, including Chairman Ken Levy, two batches of stock options. They arrived on unusually fortunate days for the executives: The first dated at the share price's first-half low; the second at its second-half low.
>
> In all, Mr. Levy received 10 grants from KLA-Tencor and its predecessor company between 1994 and 2001 -- all preceding quick runups in the share price; an analysis by The Wall Street Journal found the probability that that pattern occurred merely by chance is tiny -- around one in 20 million.
>
> Mr. Levy and company executives didn't return repeated phone and email messages

*Id*.

5

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS
CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

On May 24, 2006, the Company filed an 8-K with the SEC to announce that the Board had appointed a Special Committee of independent directors to "conduct an internal investigation relating to past stock option grants, the timing of such grants and related accounting and documentation." ¶48. Over the next several months following its initial announcement, KLA continued to issue press-releases and/or filings with the SEC which further outlined it and certain governmental entities' investigations into the alleged backdating. ¶¶49-55.

Then on January 29, 2007, KLA filed its fiscal 2006 Form 10-K and restated previously filed financial results for fiscal years 2005, 2004, 2003 and 2002. In its filing, the Company, stated, *inter alia*, that:

> This Annual Report on Form 10-K for our fiscal year ended June 30, 2006 includes restatements of the following previously filed financial statements and data (and related disclosures): (1) our consolidated financial statements as of and for our fiscal years ended June 30, 2005 and 2004; (2) our selected consolidated financial data as of and for our fiscal years ended June 30, 2005, 2004, 2003 and 2002, and (3) our unaudited quarterly financial data for the first three quarters in our fiscal year ended June 30, 2006 and for all quarters in our fiscal year ended June 30, 2005. See Note 2, "Restatement of Consolidated Financial Statements," to Consolidated Financial Statements and Exhibit 99.1 for a detailed discussion of the effect of the restatements.
>
> As a result of an investigation of our historical stock option practices by a Special Committee of our Board of Directors (see Item 3—Legal Proceedings), we discovered that certain of our stock options, primarily those granted from July 1, 1997 to June 30, 2002, had been retroactively priced for all employees who received these grants (less than 15% of these options were granted to executive officers). This means that the option exercise price was not the market price of the option shares on the actual grant date of the option, but instead was a lower market price on an earlier date. The actual grant date—when the essential actions necessary to grant the option were completed, including the final determination of the number of shares to be granted to each employee and the exercise price—is the correct measurement date to determine the market price of the option shares under the accounting rules in effect at the time. More than 95% of the total in-the-money value (market price on the actual grant date minus exercise price) of all of our retroactively priced options was attributable to those granted from July 1, 1997 to June 30, 2002.

¶63.

As a result of the need to restate, KLA recorded an additional pre-tax, non-cash, stock-based compensation expense of (a) $348 million for the periods July 1, 1994 to June 30, 2005 under APB Opinion No. 25 and (b) $22 million for the year ended June 30, 2006 under SFAS No. 123. *Id.*

6
**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS
CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

## V. ARGUMENT

### A. Plaintiff's Claims are not Subject to SLUSA's Preemption

As outlined in plaintiff's Motion for Remand, this action is not subject to preemption pursuant to SLUSA because it meets the requirements of the "Delaware carve-out." Accordingly, this Court should deny defendant's Motion to Dismiss and remand this action to the Santa Clara Superior Court. Indeed, this Court has already held that the Delaware carve-out applies to cases alleging similar claims to those alleged by plaintiff herein and taken the action requested the plaintiff. *See Huang v. Reyes, et al.*, Case No. C 07-5950 CRB, Docket No. 28 (N.D. Cal. Mar. 6, 2008) (attached as Exhibit 1 to the Declaration of Patrice L. Bishop in Support of Plaintiff's Opposition to Motion to Dismiss). *See also City of Ann Arbor Employees' Retirement Sys. v. Gecht*, 2007 U.S. Dist. LEXIS 21928, at *21 (N.D. Cal. Mar. 9, 2007); *Pace v. Bidzos*, 2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007).

More specifically, the Delaware carve-out exempts from SLUSA this action which "involves" state law claims concerning:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (II) any recommendation, position or other communication with respect to the sale of securities of an issuer that –
>
> > (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> >
> > (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C §78bb(f)(3)(A)(ii). While only one of these exceptions need apply for this Court to retain jurisdiction, as demonstrated *infra*, both of these sections apply to plaintiff's allegations, requiring that Court to reject defendant's arguments that it is without jurisdiction.

### 1. The First Prong of the Delaware Carve-Out

"There is little question that the plaintiffs' claim <u>does not</u> meet the criteria of the first prong – requiring that the action be based on the purchase or sale of securities by the issuer exclusively to or from existing holders of the securities. . .." *Huang v. Reyes*, N.D. Cal. Case No. C 07-5950 CRB

7

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

at 7:4-8 (emphasis in original).   First, as outlined in the Motion for Remand and alleged in the SAC, this action does concern "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer[.]"  15 U.S.C. §78bb(f)(3)(A)(ii)(I).  Specifically, this action "involves" the backdating and exercising of option grants (equity securities of KLA, the "issuer") to certain of the Company's directors, officers and employees ("holders of equity securities of the issuer").  Accordingly, 15 U.S.C. § 78bb(f)(3)(A)(ii)(I) applies to this action.

KLA's grant of options to purchase its equity securities to its directors, officers and employees was a "sale" of the underlying equity securities. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-1130 (9th Cir. 2002).  In *Falkowski*, the Ninth Circuit ruled that because employee stock options themselves were not listed on a national securities exchange, there is little dispute that the options do not meet the requirements of a "covered security" under SLUSA. *Id.* at 1129. However, that conclusion did not end the Ninth Circuit's inquiry.  The Ninth Circuit then examined the case law concerning both the 1933 and 1934 Acts and reached the opposite conclusion. *Id.* at 1129-30.  The court held that employee stock options were covered securities under SLUSA because the granting of an option is an actual sale of the underlying security. *Id.*  The fact that KLA's grants of stock options to its employees, officers and directors made those individuals holders of KLA's equity securities under SLUSA does not end this analysis.  Under SLUSA, the present action must also involve the purchase or sale of securities exclusively from or to the options holders.  15 U.S.C. §78bb(f)(3)(A)(ii)(I).  An analysis of employee options plans demonstrates that KLA's stock option grants also satisfy this requirement.

An option is simply a contractual duty to sell a security at a later date for a sum of money, should the employee choose to buy it. *Falkowski*, 309 F.3d at 1130.  There are two separate steps that must be taken for an employee to receive stock under an option plan.  First, the option is granted.  When the option is granted, KLA contractually obligated itself to sell stock to its employees under its employee stock option plan.  Next, the option is exercised.  When the option is exercised, the employee actually purchases stock at the contracted price, and either keeps the stock or sells it.

Here, KLA, the issuer, sold securities exclusively to holders of equity securities of the issuer when it sold stock to employee option holders when the employees exercised their options. Thus, this suit meets all of the requirements under the first prong of the Delaware carve-out. 15 U.S.C. §78bb(f)(3)(A)(ii)(I).

### 2. The Second Prong of the Delaware Carve-Out

Plaintiff's claims definitely "satisfy the second prong of the carve-out." *Huang v. Reyes*, N.D. Cal. Case No. C 07-5950 CRB at 7:8-10. "Courts in this District have consistently ruled that stock options backdating cases like the present case fall under the second prong of the Delaware carve-out. *See Pace*, 2007 U.S. Dist. LEXIS 76909 at *6-8; *City of Ann Arbor*, 2007 U.S. Dist. LEXIS 21928 at *21. Pursuant to the terms of its second prong, the carve-out expressly provides for an exempted category of class actions which involve "communications with respect to the sale of securities an issuer that . . . concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." 15 U.S.C. §78bb(f)(3)(A)(ii)(II).

Here, as alleged in the SAC, defendants solicited shareholder approval for its option plans, and the stock to fund those option plans, in the various proxies filed with the SEC. ¶¶30-46. "When the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, (2000)).

Indeed, as in *Huang v. Reyes*, N.D. Cal. Case No. C 07-5950 CRB (N.D. Cal. Mar. 6, 2008), *Pace,* 2007 U.S. Dist. LEXIS 76909 (N.D. Cal. Oct. 3, 2007), *City of Ann Arbor*, 2007 U.S. Dist. LEXIS 21928 (N.D. Cal. March 9, 2007) and *Indiana Elect'l. Workers Pension Trust Fund, IBEW v. Millard*, 2007 U.S. Dist. LEXIS 54203 at *3 (S.D.N.Y. July 26, 2007), this Court should find that plaintiff's option backdating case is exempt from SLUSA under the second prong of the Delaware carve-out. As in each of those cases, KLA used its Proxy Statements to solicit votes for option plans and the issuance of additional shares of stock. Accordingly, this Court, as it did in *Huang v. Reyes*, should also find that the second prong of the "Delaware carve-out" applies, resulting in the

1  remand of this action to the Santa Clara Superior Court and denial of Defendant's Motion to
2  Dismiss.

### B. Plaintiff's Complaint is Properly Pled as a Direct Action

However, even if this Court denies plaintiff's Motion to Remand, this action is properly pled and should not be dismissed.

#### 1. Standard of Review

When considering a motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [their] favor." *Grabinski v. Nat'l Union Fire Ins. Co. Of Pittsburgh*, 255 Fed. Appx. 633, 635, 2008 U.S. App. LEXIS 2317, at *1 (9th Cir. Jan. 29, 2008) (citations omitted). Moreover, to state their claim, pursuant to Fed. R. Civ. P. 8(a)(2) plaintiff need not plead specific facts, but rather, need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). Finally, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Plaintiff's SAC satisfies these standards.

#### 2. The Standard for Distinguishing that Plaintiff's Claims are Direct

An injured shareholder "retain[s] the right to bring an individual action for injuries affecting his or her legal rights as a stockholder." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). When assessing whether plaintiff has properly pled his claims in a direct action, this Court must answer two questions. First, "[w]ho suffered the alleged harm – the corporation or the suing stockholder individually?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del 2004). Second, "who would receive the benefit of the recovery or other remedy?" *Id*.

In this action, defendants, including the Company, interfered with plaintiff's right to vote by directly issuing to him, and others similarly situated, false and misleading information regarding defendants and their decisions regarding themselves and fellow employees. This right to vote was a legal right of each shareholder, and not the Company. Defendants' actions amounted to undue

10

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO KLA'S MOTION TO DISMISS**
**CASE NO. C 08-2249 CRB**
Z:\STULL\KLA2\PLD\DismissOppSAC.wpd

influence and breaches of their duty of of due care, loyalty, candor and full disclosure, resulting in their interference and/or impairment of plaintiff's right to vote.

### 3. **Plaintiff's Claims are Direct**

Plaintiff's claims are direct because the "right to vote stock is the individual right of the legal owner of stock. When the board of directors wrongfully interferes with or wrongfully impairs that right it violates the individual rights of stockholders." *Thorpe v. CERBCO, Inc.*, 1993 Del. Ch. LEXIS 16, *5-6 (Del. Ch. Jan. 26, 1993), citations omitted. Accordingly, "[t]he wrong is one suffered by all those who vote, but it is not a derivative wrong for that reason, but a direct one." *Id.*, 1993 Del. Ch. LEXIS 16, *5.

The issues to be voted on by the Class, as outlined in the yearly Definitive Proxies, concerned the appointment of certain directors (defendants herein) and approval of new stock option plans which would benefit the directors and other Company insiders. As alleged in plaintiff's Complaint, each time defendants issued a definitive proxy, defendants provided plaintiff, and those similarly situated, with false and misleading information. In so doing, defendants made it impossible for plaintiff and the Class to vote in a meaningful manner by misleading the shareholders regarding information that was only in the possession of defendants.

### C. **If This Court Denies Plaintiff's Motion to Remand and Grants Defendant's Motion to Dismiss, Leave to Amend is Appropriate**

Fed. R. Civ. P. 15(a)(2) provides that leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 37 U.S. 178, 182 (1962). Indeed, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error."). *See also, Broudo v Dura Pharms., Inc.*, 339 F.3d 933, 941 (9th Cir. 2003) ("Where the plaintiff offers to provide 'additional evidence' that would add 'necessary details' to an amended complaint and such offer is made in good faith, leave to amend should be granted."); In exercising its discretion, "Rule 15's policy of favoring

amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citations omitted).

Finally, the party opposing the motion for leave to amend the complaint bears the burden of showing prejudice. *DCD Programs. Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). In this case defendants will suffer no prejudice if plaintiffs are permitted to file a further amended complaint.

## VI.  CONCLUSION

For the foregoing reasons, plaintiff respectfully requests this Court deny defendant's Motion to Dismiss and Remand this action to the Superior Court. In the alternative, if this Court is inclined to grant any part of defendant's Motion, plaintiff respectfully requests leave to amend.

Dated: August 22, 2008

Patrice L. Bishop
STULL, STULL & BRODY

By:     /s/
Patrice L. Bishop
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA  90024
Tel:    (310) 209-2468
Fax:    (310) 209-2087

Jules Brody
Aaron L. Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:    (212) 687-7230
Fax:    (212) 490-2022

Counsel for Plaintiff