JOHN H. HEMANN (SBN: 165823)
JOSEPH E. FLOREN (SBN 168292)
THOMAS R. GREEN (SBN: 203480)
MATTHEW S. WEILER (SBN 236052)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: jhemann@morganlewis.com
jfloren@morganlewis.com
tgreen@morganlewis.com
mweiler@morganlewis.com

Attorneys for Defendant KLA-Tencor Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRIS CRIMI, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD W. BARNHOLT, H. RAYMOND BINGHAM, ROBERT T. BOND, RICHARD J. ELKUS, JR., STEPHEN P. KAUFMAN, KENNETH LEVY, MICHAEL E. MARKS, DEAN O. MORTON, KENNETH L. SCHROEDER, JON D. TOMPKINS, RICHARD P. WALLACE, KLA-TENCOR CORPORATION, and DOES 1 through 25,<br><br>Defendants. | Case No. CV-08-2249 CRB<br><br>**CLASS ACTION**<br><br>**KLA TENCOR CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: September 12, 2008<br>Time: 10:00 A.M.<br>Dept: Courtroom 8, 19th Floor **(SF)**<br><br>**HON. CHARLES R. BREYER** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................1

II.   ARGUMENT ..............................................................................................................2

    A.   Plaintiff's "Voting" Claims Are Derivative, Subject To Dismissal And Cannot Form The Basis For Remand...........................................................2

        1.   Plaintiff's Claims Are Derivative Because His "Voting" Allegations Do Not Allege Any Harm That Is Independent of Harm Suffered By All Shareholders or the Corporation at Large .......................................2

        2.   Plaintiff Cannot Dispute That His Claims Are Derivative Because He Seeks a Remedy, Rescission, Which Benefits the Corporation At Large ......................................................................................................6

    B.   Plaintiff Does Not Dispute That His "Holder" Claims Are Subject To Dismissal Under SLUSA.................................................................................6

    C.   The Delaware Carve Out Does Not Save Plaintiff's Claims................................6

        1.   Plaintiff's Claims Do Not Satisfy the First Prong of the Delaware Carve Out Because The Grants Complained of Were Not Made "Exclusively" to Holders of KLA Stock ......................................................7

        2.   Plaintiff's Claims Do Not Satisfy the Second Prong of the Delaware Carve Out Because They Are Derivative And Cannot Be "Maintained" in State Court..................................................................9

        3.   Even if the Delaware Carve Out Applied to Plaintiff's Allegations, Remand Should Be Denied as Futile........................................................10

    D.   Plaintiff Does Not Dispute That His Fiduciary Duty Disclosure Claims Must Be Dismissed Because Defendants Owed Plaintiff No Fiduciary Duty To Disclose Unadjudicated Historical Backdating ...............................................11

    E.   Plaintiff Does Not Dispute That He Has Failed To Plead The Alleged Misleading Proxy Statements With Sufficient Particularity ...............................11

III.   CONCLUSION .........................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bell v. City of Kellogg,*
 922 F.2d 1418 (9th Cir. 1991) .................................................................................... 10, 11

*Bradley v. First Interstate Bancorp,*
 748 A.2d 913 (Del. 2000) .................................................................................................. 10

*City of Ann Arbor Employees' Retirement Sys. v. Gecht,*
 2007 WL 760568 (N.D. Cal. Mar. 9, 2007) ........................................................................ 8

*Falkowski v. Imation Corp.,*
 309 F.3d 1123 (9th Cir. 2002) ............................................................................................ 8

*Feldman v. Cutaia,*
 2007 WL 5211892 (Del.Ch. Aug. 1, 2007) ................................................................. 3, 4, 5

*Gentile v. Rossette,*
 906 A.2d 91 (Del. 2006) ..................................................................................................... 4

*Huang v. Reyes,*
 Case No. 07-05950 CRB, 2008 WL 648519 (N.D. Cal. Mar. 6, 2008) .......................... 8, 9

*In Re: National Security Agency Telecommunications Records Order Litig.,*
 483 F. Supp. 2d 934 (N.D. Cal. 2007) .............................................................................. 11

*Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*,
 2007 WL 1223220 (N.D. Cal. March 1, 2007) ............................................................... 5, 6

*Loudon v. Archer-Daniels-Midland Co.*,
 700 A.2d 135 (Del. 1997) ...................................................................................... 2, 11, 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
 547 U.S. 71 (2006) .............................................................................................................. 6

*Sonofia v. Principal Life Ins. Co.*,
 378 F. Supp. 2d 1124 (S.D. Iowa 2005) ............................................................................. 8

*Thorpe v. CERBCO*,
 1993 WL 35967 (Del.Ch. Jan. 26, 1993) ............................................................................ 4

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
 845 A.2d 1031 (2004) ............................................................................................ 2, 3, 4, 5

**Statutes**

15 U.S.C.
 § 78bb(f)(3)(A)(i) ................................................................................................................ 7

15 U.S.C.
 § 78bb(f)(3)(D) ................................................................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20819270.3                              ii                         CV-08-2249 CRB
KLA TENCOR CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff stakes his entire opposition to KLA-Tencor Corporation's ("KLA") Motion to Dismiss on his argument that the "Delaware carve-out" set forth in 15 U.S.C. § 78bb(f)(3) requires remand and thus saves his Second Amended Complaint ("SAC") from dismissal.

Plaintiff *does not dispute* that his self styled direct shareholder class action seeking damages for "holding" shares of KLA stock is a covered class action subject to removal under the Securities Litigation Uniform Standards Act ("SLUSA"). Nor does he dispute that his holder claims are subject to mandatory dismissal under SLUSA. Plaintiff also ignores the fact that his two fiduciary duty claims are subject to dismissal for the additional reasons that defendants owe Plaintiff no fiduciary duty to confess prior acts that have not been adjudicated, and he has failed to plead his claims, which at root are claims of fraud and misrepresentation, with sufficient particularity under Delaware and federal law.

As a result of Plaintiff's concessions, this motion and Plaintiff's Motion to Remand boil down to whether his voting allegations: (1) constitute a direct action; (2) fit into the Delaware carve out; and (3) can be maintained as a direct action in state court. The answer to each of these questions must be "No." Notwithstanding Plaintiff's half hearted argument to the contrary, controlling Delaware authority establishes that Plaintiff's voting-related claims are *exclusively* derivative and cannot be alleged in a direct action, because this case does not and cannot possibly involve any claims of abuse of majority versus minority voting power. There is no dispute that Plaintiff cannot assert these claims in a derivative capacity because he lacks standing to do so. Beyond this, even if Plaintiff's derivative voting allegations were within the parameters of the exception from SLUSA removability and dismissal, both SLUSA and Ninth Circuit precedent regarding the general removal statute hold that remand should not be ordered if the claim cannot be sustained in state court. That is unquestionably the case here. Judge Komar has already rejected Plaintiff's un-amended voting allegations as derivative. Remand would be futile and a further waste of judicial resources.

Faced with comprehensive Delaware and Northern District authority establishing the derivative nature of his voting allegations, Plaintiff resorts to asking this Court for a favor.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20819270.3                              1                              CV-08-2249 CRB
KLA TENCOR CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

1  Plaintiff urges this Court to turn a blind eye to the nature and sustainability of the very allegations he says warrant remand back to state court. This gift he requests is spelled out explicitly in the first issue Plaintiff urges the Court to decide, and made implicit throughout his brief, which regurgitates his motion to remand and all but ignores the authority and arguments in support of KLA's motion to dismiss. This Court should reject Plaintiff's invitation to ignore the sufficiency of his own allegations and dismiss Plaintiff's improper derivative allegations he chose to replead in a direct class action even after Judge Komar rejected them. Plaintiff should not be granted leave to amend a third time.

## II. ARGUMENT

### A. Plaintiff's "Voting" Claims Are Derivative, Subject To Dismissal And Cannot Form The Basis For Remand.

#### 1. Plaintiff's Claims Are Derivative Because His "Voting" Allegations Do Not Allege Any Harm That Is Independent of Harm Suffered By All Shareholders or the Corporation at Large.

Contrary to Plaintiff's argument, there is no direct cause of action for interference with the right to vote under controlling Delaware law.[1] Courts look to the nature of the <u>harm</u> alleged, in this case the harm stemming from the alleged voting interference, to determine whether a claim is direct or derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (2004) ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.").

It is no accident that Plaintiff's opposition avoids all discussion of the alleged harm. the

---

[1] Although Plaintiff's causes of action are plainly derivative, they would fail even if deemed direct. Plaintiff has not alleged which statements in which proxies were supposedly material to his "approval" of the issuance of any KLA shares. Thus, Plaintiff has not pled his claims for breach of fiduciary duty with the specificity required under federal rules and Delaware law. *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997). Moreover, Plaintiff cannot make such allegations regarding the stock option plans at issue. Plaintiff's allegation that he approved the issuance of any shares pursuant to the 1982 Stock Option Plan is absurd, as he was never asked to approve the issuance of such shares because they were automatically added by an "Evergreen Provision." *See* SAC, ¶ 33. Although Plaintiff alleges that he approved the 2004 Equity Incentive Plan, under which shares were issued, he also alleges that the backdating at KLA occurred principally from July 1997 to June 30, 2002. *See* SAC, ¶¶ 1, 50 and 66. Plaintiff alleges no backdating subsequent to the approval of the 2004 Equity Incentive Plan or otherwise relevant to that plan. Thus, there is no basis to conclude Plaintiff could ever plead any facts that he was misled regarding solicitation of approval of issuance of any shares of KLA stock.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20819270.3                                    2                                    CV-08-2249 CRB
KLA TENCOR CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

SAC does not allege any specific harm **Plaintiff** purportedly suffered from his inability to make an informed vote. The only harm he could allege—equity dilution and voting dilution—a term he removed from his original complaint because Judge Komar correctly dismissed his dilution claims as derivative. But removing the word "dilution" and neglecting to plead any other harm does not change the fact that the only harm that could stem from his voting allegations is dilution. Plaintiff's purposeful vagueness does not save the SAC from dismissal.

The essence of Plaintiff's backdating allegations is that KLA granted stock options allowing recipients to acquire company stock at exercise prices that were lower than the market value on the date the options were actually granted. Plaintiff has pled these very facts, which amount to no more or no less than a claim of dilution. *See* SAC at ¶¶ 30, 48 and 66. Under Delaware law, "[a] claim for wrongful equity dilution is premised on the notion that the corporation, by issuing additional equity for insufficient consideration, made the complaining stockholder's stake less valuable." *Feldman v. Cutaia*, 2007 WL 5211892 at *7 (Del.Ch. Aug. 1, 2007) (holding that equity dilution claims are derivative).

Attempting to avoid any allegation of dilution, the only harm Plaintiff claims resulted from the issuance of the options is the $370 million compensation charge **KLA** was forced to recognize in 2007 (when it completed the restatement of its historical financial statements) in order to correct its past accounting for the backdated options. SAC at ¶ 66, Opposition Brief at 6:26-28. As such, Plaintiff has not and cannot satisfy the standard established by the Delaware Supreme Court in *Tooley* because he alleges no harm independent of the corporation. *Tooley*, 845 A.2d at 1039 (2004) ("The stockholder must demonstrate that . . . he or she can prevail without showing an injury to the corporation.").

Nor can Plaintiff claim any harm to him and the class members he purports to represent that distinguishes him from *all* shareholders. Plaintiff attempts to suggest that he would have had the power to thwart the issuance of additional shares, and thus the dilution of his own shares, had he not been denied the informed vote he claims he was owed. Accepting Plaintiff at face value, he pleads a harm experienced by *every* shareholder, as each additional illegitimate share injected into the market has an equivalent dilutive effect on each legitimate existing share already in the

1  market. Delaware courts uniformly recognize such harm to be derivative because "it falls upon
2  all shareholders equally and falls only upon the individual shareholder in relation to his
3  proportionate share of stock as a result of the direct injury being done to the corporation."
4  *Feldman*, 2007 WL 5211892 at *7.
5        Under Delaware law, a claim for impairment of voting rights is essentially and necessarily
6  derivative, with the only exception being a narrow category of cases where such claim is coupled
7  with allegations of entrenchment or control by a controlling shareholder or group of shareholders.
8  Delaware law recognizes a direct cause when a separate minority class of shareholders is
9  uniquely impaired by the impairment of voting rights, not when all shareholders are harmed in the
10 same way. Allegation of interference with the right to vote, like diminution in value of stock, is
11 derivative when it results in "equal dilution of … voting power of each of the corporation's
12 outstanding shares." *Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006).
13       Plaintiff's misplaced reliance on *Thorpe v. CERBCO*, 1993 WL 35967 (Del.Ch. Jan. 26,
14 1993), an unpublished pre-*Tooley* outlier case easily distinguished from the present matter, lends
15 further support to KLA's position. *Thorpe* involved allegations that the defendant controlling
16 shareholders used misleading proxies to wrest control of the corporation from plaintiffs. *Thorpe*,
17 1993 WL 35967 at *1. The crucial allegation in *Thorpe* was that a false or misleading proxy
18 statement allowed a group of defendants to usurp control of the company:

> The 1982 vote amended the certificate of incorporation to authorize
> a recapitalization that permitted shareholders to exchange their
> voting stock for either new Class A or new Class B voting stock.
> Class A stock carries relatively weaker voting rights but greater
> rights to dividends than does the Class B stock. The Class B shares
> have the power to elect three of the four members of the CERBCO
> board of directors. As was expected (and the expectation was
> disclosed in the 1982 Proxy Statement) most shareholders accepted
> Class A shares, while Robert and George Erikson accepted Class B
> shares. On the completion of the recapitalization the Eriksons did
> not own a majority of the Class B shares, but over the intervening
> years, through the conversion of other Class B shares to Class A
> stock, they have come to do so.

26 *Thorpe*, 1993 WL 35967 at *1.
27       In a similar case, Judge Whyte recently rejected the notion that *Thorpe* creates a direct
28 cause of action for abridged voting rights that do not result in a change in control of the

corporation. *See Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, 2007 WL 1223220 at *10 (N.D. Cal. Mar. 1, 2007) (dismissing direct claims as derivative; noting that "*Thorpe* involved allegations that false and misleading information in proxy disclosures resulted in shareholder approval . . . that ultimately gave defendants voting control over the company."). Plaintiff stockholders in the *Indiana Elec. Workers Pension Trust Fund* case alleged that they had a right to vote to approve or reject severance payments of a certain quantity and defendants denied them the right to reject a $21.4 million payout to departing Hewlett Packard CEO Carly Fiorina. Applying *Tooley*, the court looked beyond plaintiff's characterization of the harm as direct and analyzed the "body of the complaint," the "nature of the wrong alleged" and the "relief requested" to determine whether the claim was in fact direct or derivative. The court noted:

> Although plaintiffs argue that they have been injured because they were not given their right to vote, the nature of their claims is essentially mismanagement of corporate assets and derivative in nature. "Suits against management for waste resulting from excessive payments of corporate funds (whether made to individual defendants or to third parties) do not affect contractual rights of shareholders associated with the ownership of common stock."

*Id*. at *10 (internal citations to Delaware cases omitted). The court found plaintiffs' claims could not be direct because plaintiffs' success in the lawsuit would simply result in the return of the $21.4 million to HP, not to plaintiffs. *Id*. at *11. Similarly, Plaintiff in this action seeks the rescission of the allegedly backdated option grants – a remedy that would (allegedly) benefit KLA by returning stock to its treasury and cancelling outstanding options, but would have no effect upon Plaintiffs beyond the equal impact upon all shareholders. *See* SAC at ¶ 66. The nature of Plaintiff's claim is plainly derivative.

This district's ruling in *Indiana Elec. Workers Pension Trust Fund* is in line with controlling Delaware law, which recognizes a direct cause of action only under a narrow fact pattern that is not, and cannot be, alleged here. A direct action for impairment of voting rights "can only arise when a controlling stockholder, with sufficient power to manipulate the corporate processes, engineers a dilutive transaction whereby that stockholder receives an exclusive benefit of increased equity ownership and voting power for inadequate consideration." *Feldman*, 2007 WL 5211892 at *8. Plaintiff does not allege that any interference with his voting rights

1  ultimately gave defendants voting control over the company; nor can he.[2]  Rather, Plaintiff's

2  opposition brief, like his SAC, addresses harm to **all** shareholders.  Plaintiff's derivative voting

3  claims should be dismissed with prejudice.

### 2. Plaintiff Cannot Dispute That His Claims Are Derivative Because He Seeks a Remedy, Rescission, Which Benefits the Corporation At Large.

KLA's moving papers set forth that Plaintiff's claims are derivative because he seeks rescission as a remedy, a remedy that would solely benefits KLA, and not Plaintiff or the narrow set of shareholders he purports to represent.  *See, e.g. Indiana Elec. Workers Pension Trust Fund*, 2007 WL 1223220 at *11.  Plaintiff makes no effort in his opposition brief to confront or dispute this reality.

### B. Plaintiff Does Not Dispute That His "Holder" Claims Are Subject To Dismissal Under SLUSA.

KLA's moving papers explain that Plaintiff's "holder" claims are subject to dismissal under SLUSA.  *See, e.g. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82 (2006).  Plaintiff's opposition brief simply ignores, and thus concedes, that he has pled "holder" claims that subject this action to removal and dismissal under SLUSA.

### C. The Delaware Carve Out Does Not Save Plaintiff's Claims.

Rather than address the thrust of KLA's motion to dismiss, which is fatal to his claims on the merits, Plaintiff attempts to hide behind a jurisdictional artifice of SLUSA, claiming the Court should not consider the merit(lessness) of his claims because they supposedly are within an exception to SLUSA removability known as the "Delaware carve out."  Plaintiff is wrong because his claims are insufficient as a matter of law (and thus could not possibly fall within the carve-out, which covers only claims that may be pursued in state court, not invalid claims constructed only for the purpose of attempting to avoid federal jurisdiction), and because his claims do not

---

[2] Plaintiff does not dispute that he cannot amend to state a direct cause of action because KLA is a large public company with diffuse ownership and no controlling shareholder or group.  Nor does he make any effort to distinguish *Vogel v. Jobs*, No. 06-5208 JF, 2007 WL 3461163 *2 (N.D. Cal. Nov. 14, 2007), or any of the other case law discussed in KLA's moving papers, which demonstrates his inability to state a direct cause of action based on his voting allegations.

fall within the terms of the SLUSA exception to removability and dismissal.

### 1. Plaintiff's Claims Do Not Satisfy the First Prong of the Delaware Carve Out Because The Grants Complained of Were Not Made "Exclusively" to Holders of KLA Stock.

Plaintiff's claims do not satisfy the first prong of the "Delaware carve out" exception to SLUSA. The first prong exempts from preemption certain class actions that involve, "the purchase or sale of securities by the issuer or an affiliate of the issuer or an affiliate of the issuer <u>exclusively</u> from or to holders of equity securities of the issuer." 15 U.S.C. § 78bb(f)(3)(A)(i) (emphasis added). Plaintiff's SAC alleges that KLA made improper *grants* of stock options to "all employees who received grants between July 1, 1997 and June 30, 2002." *E.g.*, SAC at ¶1. Plaintiff's claim plainly does not "exclusively" involve sales of KLA stock exclusively to persons who were already holders of KLA equity securities. As the SAC alleges, the stock option grants that are the subject of this litigation were granted to KLA ***employees*** – not necessarily to KLA <u>shareholders</u>. That is the end of the inquiry. Moreover, of necessity many of the challenged grants were made to new employees or others who were not yet holders of KLA stock options or shares at the time of the grant. Now, Plaintiff seems to be suggesting (for the first time) that even the new employees should be deemed holders of KLA equity securities because, after the challenged options were granted to them, they became holders of those options and were holding them when they later exercised the options to acquire stock. This theory is not consistent with the SAC, which challenges purportedly improper option ***grants*** and alleged failures to disclose related to those grants, and is not supported by any caselaw or the plain language and meaning of SLUSA.

First, the only "purchase or sale" of a "covered" security Plaintiff complains of is his decision to hold shares supposedly resulting from defendants' failure to disclose the earlier alleged improper grant of stock options, not the later exercise of such options. Plaintiff alleges that defendants failed to disclose information relating to the approval of stock options to be granted to all employees, and seeks to rescind the original grants, not those instances where an employee later exercised his or her options. SAC, Prayer for Relief ¶¶ 4 and 5. Plaintiff does not, has not, and cannot allege that defendants engaged in any misconduct or sought any

shareholder approval with respect to the exercise of the options.

Second, Plaintiff's new argument is refuted by the very authority upon which he relies. The Ninth Circuit in *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002) establishes that a stock option grant constitutes a "sale" of the security at the time of the grant, irrespective of whether the option is ever exercised. *See City of Ann Arbor Employees' Retirement Sys. v. Gecht*, 2007 WL 760568, at *4 (N.D. Cal. Mar. 9, 2007) ("the act of granting stock options constitutes ***the sale*** of securities") (emphasis added). Plaintiff has alleged that KLA improperly issued "backdated stock options to all employees who received grants between July 1, 1997 and June 30, 2002." *See* SAC ¶1. Other courts have recognized that where numerous grants are awarded over a period of years to "all employees," including new hires who were not existing shareholders at the time of the grant, there can be no doubt that the securities were not <u>exclusively</u> sold to existing shareholders. *See, e.g. Sofonia v. Principal Life Ins. Co.*, 378 F. Supp. 2d 1124, 1133-34 (S.D. Iowa 2005) (carve-out inapplicable where shares not offered exclusively to existing shareholders); *Huang v. Reyes*, Case No. 07-05950 CRB, 2008 WL 648519 *4 (N.D. Cal. Mar. 6, 2008) ("There is little question that the plaintiff's claim *does not* meet the criteria of the first prong.").

*Falkowski* does not support the notion that two sales subject to challenge take place – one at the time of the grant and another at the time of the exercise – and Plaintiff cites no authority to support his novel argument splitting the challenged "sale" into two separate events. Regardless whether the later exercise transaction is a separate sale of securities, Plaintiff's allegations in ***this case*** <u>concern alleged impropriety in the earlier grant transaction, not in the exercises that were merely done according to the terms of the grants.</u> Moreover, Plaintiff's claim must focus upon the grants, not the later exercises, because the grant of options is the only transaction he can claim he was asked to approve. He cannot now argue that his claim concerns the exercise, an event he did nothing to authorize or approve, in order to try and stretch his claim into the first clause of the carve out.

### 2. Plaintiff's Claims Do Not Satisfy the Second Prong of the Delaware Carve Out Because They Are Derivative And Cannot Be "Maintained" in State Court.

KLA has already briefed this issue at length, both in its moving papers, and in its opposition to Plaintiff's Motion to Remand, which it hereby incorporates into this reply brief by this reference. In summary, it bears noting that none of the cases upon which Plaintiff places his reliance concerned a plaintiff who sought remand premised on allegations that were subject to a pending motion to dismiss. None of the cases upon which Plaintiff stakes his argument concerned a plaintiff who sought remand based on allegations that had already been dismissed by the state court. Nor did any Plaintiff's cases concern removal predicated on what were undisputably holder claims. And none of the cases addressed arguments by the defendant that: (1) the second prong of the carve out cannot apply to wholly derivative allegations as to which the plaintiff admittedly has no standing to sue; or (2) that remand may be warranted only where a plaintiff can demonstrate that his action can be <u>maintained</u> in state court. *See* 15 U.S.C. § 78bb(f)(3)(D) (allowing for remand only after "the Federal Court determines that an action may be maintained in State court") (emphasis added).

Neither Plaintiff's opposition brief nor his motion to remand addresses any of these factors which distinguish the cases he argues support remand of this action. Instead, Plaintiff presumes his skewed reading of SLUSA is not only correct, but obvious, and cites *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) for the fundamental proposition that a court should only stray from enforcing the "plain" language of a statute where "the disposition required by the text is [] absurd." Contrary to Plaintiff's assumption, the plain language of 15 U.S.C. § 78bb(f)(3) does not set forth that the mere presence of unsustainable derivative voting allegations in an action requires remand of the case notwithstanding its undisputed SLUSA-barred holder claims. Even if it did, Plaintiff urges this Court to order a plainly absurd result.

This Court recently noted in another backdating case: "<u>With few exceptions</u>, SLUSA limits the maintenance of certain class-action suits in either state or federal court and requires that such suits be removed to federal court and dismissed." *Huang*, 2008 WL 648519 at *2 (emphasis added). Plaintiff's interpretation of the second prong of the Delaware carve out renders SLUSA

1  meaningless, as the exception outlined in 15 U.S.C. § 78bb(f)(3) would completely eviscerate the
2  rule of SLUSA; a plaintiff would need only append a faulty voting rights claim to a complaint
3  that would otherwise be subject to removal and mandatory dismissal under SLUSA – contrary to
4  the plain meaning and express purpose of the statute.  It is hard to imagine a securities fraud claim
5  that could not be "saved" by Plaintiff's broad concept of the Delaware carve out.  For there will
6  always be a proxy statement in any case involving a public company, and there will always be a
7  voting allegation that one could make to stave off application of SLUSA.  And if that voting
8  allegation need not even be pled as a direct claim, and can be perpetrated by someone without
9  standing to bring a derivative claim, then the Delaware carve out has no bounds.

### 3. Even if the Delaware Carve Out Applied to Plaintiff's Allegations, Remand Should Be Denied as Futile.

Consistent with SLUSA's requirement that a claim be maintainable in state court in order to warrant remand, the Ninth Circuit recognizes the general principle that a claim should be dismissed, rather than remanded pursuant to 28 U.S.C. § 1447, if remand of the claim would be futile.  In *Bell v. City of Kellogg,* 922 F.2d 1418 (9th Cir. 1991), the Ninth Circuit approved the district court's finding that the plaintiff lacked standing to bring their state law claims in state court due to a failure to meet all procedural requirements of those claims.  Because "[t]he state court would have simply dismissed the action on remand," the Ninth Circuit held that "[t]he district court correctly denied the motion to remand and dismissed the state claims."  *Id*. at 1425 (holding "remand to state court would be futile").  The same logic applies forcefully to this action.  First, this Court has atypical assurance that Plaintiff's claims will not survive in state court because Judge Komar has already granted KLA's prior motion arguing that Plaintiff's still un-amended voting claims are derivative and subject to dismissal.  Second, Plaintiff admits that he no longer owns KLA stock, and in doing so admits that he lacks standing to bring the derivative claims he has improperly brought in this direct putative class action.  SAC ¶ 6; s*ee Bradley v. First Interstate Bancorp,* 748 A.2d 913 (Del. 2000) (clarifying that Delaware law unequivocally requires a Plaintiff to be a current shareholder in order to bring and maintain a derivative suit.).

This district recently followed this "clear Ninth Circuit precedent" to deny plaintiff's motion for remand and dismiss plaintiff's state law claims which were subject to intervention and removal by the U.S. government in state court. *In Re: National Security Agency Telecommunications Records Order Litig.*, 483 F. Supp. 2d 934, 946 (N.D. Cal. 2007) (reasoning that "remand would be futile, serving only as a delay and a waste of resources for the parties and the federal and state courts"). If Plaintiff's voting claims are remanded, the state court will certainly dismiss them once again as it already did when faced with KLA's demurrer to Plaintiff's original complaint. Plaintiff will then be left only with his holder claims, which he concedes are subject to dismissal under SLUSA. KLA will then re-remove the case and renew its motion to dismiss. This Court can and should put an end to Plaintiff's futile and wasteful endeavor. The Ninth Circuit has made clear that it does "not believe Congress intended to ignore the interest of efficient use of judicial resources." *Bell*, 922 F.2d at 1424-25 (affirming the district court's dismissal). This case should be no exception.

### D. Plaintiff Does Not Dispute That His Fiduciary Duty Disclosure Claims Must Be Dismissed Because Defendants Owed Plaintiff No Fiduciary Duty To Disclose Unadjudicated Historical Backdating.

As KLA's moving papers set forth that Plaintiff has failed to state a claim for breach of the fiduciary duty of disclosure because defendants owed Plaintiff no duty to disclose historical backdating that had not, and still has not, been adjudicated. *See Loudon,* 700 A.2d at 145 ("Nevertheless, plaintiff's argument would have the ADM Board confess to wrongdoing prior to any adjudication of guilt. This is precisely the situation the self-flagellation rule was designed to prevent."). Plaintiff makes no effort in his opposition brief to deal with this fundamental deficiency with his fiduciary duty claims. They should be dismissed.

### E. Plaintiff Does Not Dispute That He Has Failed To Plead The Alleged Misleading Proxy Statements With Sufficient Particularity.

KLA's moving papers explain that Plaintiff has failed to state a claim for breach of fiduciary duty because his two causes of action are both based on a theory that KLA submitted misleading proxy statements, which requires pleading with particularity under Delaware law. A plaintiff must plead:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20819270.3   11   CV-08-2249 CRB
KLA TENCOR CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

> some basis for a court to infer that the alleged violations were material. For example, a pleader must allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury.

*Loudon*, 700 A.2d at 141. Plaintiff makes no effort in his opposition brief to address this fundamental shortcoming. Delaware law aligns with federal pleading rules, which require heightened pleading under Rule 9 for all fraud claims.

Plaintiff's claims should be dismissed because Plaintiff has failed to satisfy the heightened pleading standard of Rule 9(b), which requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The fact that Plaintiff has pled his failure to disclose theory of liability as breach of fiduciary duty claims, as opposed to fraud claims, offers Plaintiff no shelter. Under Ninth Circuit law, a claim is "grounded in fraud" or is to "sound in fraud" if the plaintiff can be said to have alleged "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003). In the case of *In re Calpine Corp. ERISA Litig.,* 2005 U.S. Dist. LEXIS 34452 (N.D. Cal. Dec. 5, 2005), this district ruled that a plaintiff's allegation of breach of fiduciary duty must be reviewed under the requirements of Rule 9(b) if it is "specifically premised on averments of fraud." *Id.* at *19 (holding that allegations of "disseminating misleading and incomplete information" and "failing to inform participants . . . of material information" were sufficient to bring the plaintiff's amended complaint under Rule 9(b)'s heightened standard.). Here, Plaintiff's allegations that defendants breached their fiduciary duties by intentionally making misrepresentations and failing to disclose certain material facts are likewise "specifically premised on averments of fraud," and constitute claims "grounded in fraud." *See* SAC ¶¶ 86, 91. Thus, Plaintiff's "pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess,* 317 F.3d at 1103-1104.

The SAC falls far short of Rule 9(b)'s requirements. Allegations of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1106 (internal quotation marks omitted). Plaintiff does not allege which specific defendant(s) made misrepresentations or failures to disclose, nor does he allege what specific omitted information, if

1  any, was material to Plaintiff's alleged damages.  Plaintiff merely claims that "[e]ach of the
2  defendants" and "all defendants" allegedly breached their duty of candor and full disclosure.
3  Rule 9(b) "requires that allegations of fraud identify the parties to the misrepresentations such
4  that each defendant is on notice of what specifically they are accused of." *Belodoff v. Netlist,*
5  *Inc.,* 2008 U.S. Dist. LEXIS 45289, at *13 (C.D. Cal. May 30, 2008) (citing *Lancaster County.*
6  *Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991)); *Semegen v. Weidner,*
7  780 F.2d 727, 731 (9th Cir. 1985).  Plaintiff fails to place specific defendants on notice of specific
8  allegations, requiring that his breach of fiduciary duty claims be dismissed under Rule 9(b).

## III.   CONCLUSION

Plaintiff's entire action should be dismissed with prejudice.  SLUSA requires dismissal of the entire action and Plaintiff's lack of standing precludes him from ever stating a derivative cause of action.  Plaintiff has had three chances to state a claim and has offered no reason to suggest he could plead a claim if a fourth opportunity were granted him.

Dated: August 29, 2008

JOHN H. HEMANN
JOSEPH E. FLOREN
THOMAS R. GREEN
MATTHEW S. WEILER
**MORGAN LEWIS & BOCKIUS LLP**

By      /s/
        Thomas R. Green

Attorneys for Defendant KLA-Tencor Corporation