**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS CRIMI, | No. C 08-02249 CRB |
| Plaintiff, | **ORDER OF DISMISSAL AND REMAND** |
| v. | |
| EDWARD W BARNHOLT, et al., | |
| Defendants. | |

This putative class action lawsuit alleges a breach of fiduciary duty by certain senior officers of KLA-Tencor Corporation ("KLA"). The lawsuit was originally brought in the Santa Clara Superior Court, and Defendants removed to federal court on the basis of preemption by the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p, 78bb ("SLUSA"). Plaintiff now moves to remand the complaint to state court, arguing that the case falls within one of SLUSA's preemption exemptions. Defendants move to dismiss on the ground that the claims are covered by SLUSA or are derivative in nature and therefore not valid in federal or state court. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, the Court DISMISSES Plaintiff's claims based on holding their KLA stock and GRANTS the motion to remand Plaintiff's claims premised on voting as KLA stockholders.

## FACTUAL ALLEGATIONS

Plaintiff Crimi filed this class action on behalf of a class of people who owned KLA common stock between September 20, 2002 and September 27, 2006, with the exception of the shareholders who previously settled with KLA ("Plaintiffs"). Plaintiffs sue current and former officers and members of the KLA Board of Directors ("Defendants"), alleging that they failed to inform Plaintiffs that KLA had issued backdated stock options to senior executives between 1997 and 2002, and therefore breached their fiduciary duty to Plaintiffs. See Plaintiffs' Second Amended Complaint ("SAC") at ¶ 1. Count I alleges that Defendants breached their fiduciary duty of due care and loyalty, and Count II alleges a breach of their duty of candor and full disclosure. Id. at ¶¶ 78-93. Plaintiffs allege that proxies filed with the Securities and Exchange Commission between 1997 and 2005 misrepresented the value of the company to its stockholders. Id. at ¶¶ 31-47. While the proxies stated that the "exercise price of the options is the fair market value of Common Stock as of the date of grant," KLA concluded, after an internal investigation, that Defendants had backdated the stock options. Id. at ¶¶ 31-47, 66. Plaintiffs claim that they were misled by these proxies, which failed to inform the stockholders of ongoing stock options backdating practices, and that Plaintiffs relied on information in the proxies in making decisions as shareholders of KLA. Id. at ¶¶ 80-81.

## PROCEDURAL HISTORY

Plaintiffs filed the initial complaint in the Santa Clara Superior Court. Defendants filed a motion to stay and a demurrer to Plaintiffs' complaint. The Santa Clara Superior Court granted Defendants' demurrer with leave to amend on the grounds that the causes of action should be brought as derivative claims due to the fact that Plaintiffs alleged a harm that impacted all of the shareholders equally, rather than a unique harm to Plaintiffs. The state court also denied the motion to stay without prejudice. Plaintiffs filed a First Amended Complaint for Breaches of Fiduciary Duty ("FAC") which included a state fraud claim based on an alleged violation of California Corporations Code § 1507, alleging that Plaintiff Chris

2

Crimi was directly harmed by financial losses he suffered by holding his shares. See FAC at ¶¶ 74-79. Defendants removed the case to federal court on the basis of SLUSA preemption. By stipulation, Plaintiffs subsequently filed the SAC, which eliminates the California fraud cause of action, leaving only the claims for breach of fiduciary duty under Delaware law. Plaintiffs subsequently filed a motion to remand the case to state court and Defendants moved to dismiss the entire complaint.

## DISCUSSION

**A.    SLUSA**

In an effort to curb abusive litigation in private securities class action lawsuits, Congress passed the Private Securities Reform Act, codified as 15 U.S.C. § 77z-1, which includes heightened procedural and substantive requirements for filing these actions. Huang v. Reyes, 2008 WL 648519 at *2 (N.D. Cal. Mar. 6, 2008). As a result of this legislation, many Plaintiffs began to file securities class actions under state law in state court rather than federal court. Id.; see also Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 82 (2006). In response, Congress enacted SLUSA to bar private securities class action lawsuits in state or federal court, based on state law, which allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" or allege "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). SLUSA requires that such lawsuits be removed to federal court and dismissed. 15 U.S.C. § 78bb(f)(2).

Although SLUSA preempts most state law private securities class action lawsuits, the statute includes some exceptions. The relevant exception, raised by Plaintiffs, is known as the "Delaware carve-out" and preserves class actions based on the law of the security issuer's state of incorporation when certain criteria are met. 15 U.S.C. § 78bb(f)(3)(A)(i). The action must involve either:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

3

(II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that--

    (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

    (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii).

Plaintiffs move to remand on the ground that all of the claims in the SAC fall within the Delaware carve-out; Defendants move to dismiss on the ground that they do not, and even if some do, because the case was properly removed, the Court should maintain supplemental jurisdiction of the state law claims and dismiss them for failure to state a claim.

**B.  The Court has Subject Matter Jurisdiction Because the Complaint was Properly Removed to Federal Court**

The operative complaint at the time of removal was the FAC. Plaintiffs implicitly concede that the claims of the FAC fall within the covered actions precluded by SLUSA, as they argue only that the claims in the SAC fall within an exemption to SLUSA preemption.

Plaintiffs' concession makes sense. All of the FAC claims could not have come under the carve-out exception because it requires that the causes of action be brought under the law of the defendant company's state of incorporation. 15 U.S.C. § 78bb(f)(3)(A). The causes of action in the FAC were not based solely on Delaware law, KLA's state of incorporation, but rather included claims based on both California and Delaware law. See FAC at ¶¶ 74-95. Thus, Defendants properly removed the FAC to this Court.

Plaintiffs nonetheless argue that the claims of the SAC fall within the carve-out and therefore the SAC must be remanded, even if the FAC was properly removed. Defendants respond that the FAC is the only relevant complaint when analyzing whether the case should be remanded. Defendants cite a Ninth Circuit case and an Eleventh Circuit case reciting that remand should be "determined by the operative complaint at the time of removal." Behlen v. Merrill Lynch, 311 F.3d 1087, 1095 (11th Cir. 2002); Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1211 (9th Cir. 1998). These cases, however, merely

4

hold that to determine whether a court has removal jurisdiction, courts look to the operative complaint at the time of removal. A court always has discretion to remand if the original bases for removal jurisdiction have been eliminated. See California Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087, 1091 (9th Cir. 2008). The Court must therefore determine if the SAC includes any federal claims, that is claims preempted by SLUSA, such that the Court must retain jurisdiction, or whether there are no longer any federal claims such that it has discretion to remand.

## C.     Plaintiffs' Complaint Falls Within the Class of Claims Preempted by SLUSA

The SAC satisfies the general requirements of SLUSA because (1) the complaint constitutes a "covered class action," defined as a complaint that includes a request for damages with facts common to all class members, (2) the prayer for relief is based on state law alleging that Defendants breached their fiduciary duty owed to Plaintiffs, (3) Plaintiffs claim that Defendants made material misrepresentations and omissions in failing to inform Plaintiffs of their backdating practices, and (4) these alleged misrepresentations were in connection with the sale or purchase of covered securities. See 15 U.S.C. § 78bb(f)(5)(B); see also Huang, 2008 WL 648519 at *2. In regard to the fourth prong, granting stock options involves the purchase or sale of covered securities. See Huang, 2008 WL 648519 at *2 (citing Falkowski v. Imation Corp., 309 F.3d 1123, 1129-30 (9th Cir. 2002) ("The grant of an employee stock option on a covered security is therefore a 'sale' of that covered security.")).

Plaintiffs nonetheless argue that their claims fall within the Delaware carve-out to SLUSA preemption.

## D.     The Delaware Carve-Out

Plaintiffs' SAC claims fall into two categories: "holder claims" and "voter claims." The "holder claims" arise from Plaintiffs' allegations that Defendants failed to disclose the options backdating in the proxy statements and therefore Plaintiffs were "deprived" of their ability to make an informed decision concerning whether they should "continue holding their shares of KLA-Tencor stock." SAC at ¶ 81(i). The voting claims arise from their allegations that the non-disclosure in the proxy statements deprived them of their ability to make an

5

informed decision concerning whether they should allow the Evergreen Provision, a Provision which added 5,903,603 shares of KLA-Tencor stock into the 1982 Stock Option Plan, and whether to adopt the 2004 Equity Incentive Plan. SAC at ¶¶ 43, 45, 81(ii).

### 1. The Holder Claims are Preempted by SLUSA and Must be Dismissed

Defendants move to dismiss the holder claims on the ground that they are preempted by SLUSA and do not fall within the Delaware carve-out. Plaintiffs do not directly challenge this assertion and instead focus on the voting claims. This omission is unsurprising given that a claim that Defendants omitted material information which caused Plaintiffs to hold, sell, or purchase stock is the quintessential securities fraud action preempted by SLUSA. Moreover, these claims do not fall within either prong of the Delaware carve-out.

Defendants argue that the first prong does not apply because the sale of securities was not made "exclusively" to "existing" shareholders, as some of the new KLA employees did not already own shares of KLA at the time of the stock option grants. See 15 U.S.C. § 78bb(f)(3)(A)(ii)(I); Opposition to Motion to Remand at 11. Plaintiffs do not address this argument; instead they rely on Falkowski for the proposition that granting a stock option is a sale of that security. See 309 F.3d at 1129-30. However, Falkowski does not analyze the Delaware carve-out and holds only that certain claims involving stock option grants are within the class of claims preempted by SLUSA. Id. at 1128. Moreover, Plaintiffs argue that this case is indistinguishable from Huang, where this Court held that the claims did not meet the requirements of the first prong of the carve-out. 2008 WL 648519 at *4.

The holder claims also do not fall within the second prong of the carve-out because they do not meet the requirement that the complaint involve a recommendation or communication about shareholders' decisions "with respect to voting their securities [ . . . ] or exercising dissenters' or appraisal rights." See 15 U.S.C. § 78bb(f)(3)(A)(ii)(II).

1  At oral argument, Plaintiffs confusingly argued that the holder claims do fall
within the carve-out because they can be maintained under California law. However,
they have previously represented to the Court in writing that all of their claims in the
SAC fall solely under Delaware law. Accordingly, Plaintiffs' claims that arise out of
their decision to "hold" their KLA stock are DISMISSED as preempted by SLUSA.

**2.     The Voting Claims Fall Within the Delaware Carve-out Exception**

The voting claims fall within the second prong of the carve-out. Plaintiffs' voting claims allege a putative class action under Delaware law, the state of KLA's incorporation, involving a "recommendation, position, or other communication with respect to the sale of securities of an issuer that [ . . . ] concerns decisions of such equity holders with respect to voting their securities         [ . . . ] or exercising dissenters' or appraisal rights." See 15 U.S.C. § 78bb(f)(3)(A)(ii)(II). KLA repeatedly asked its shareholders to vote to issue more common stock in order to free up additional stock for employee options. See SAC at ¶¶ 31-47. Therefore, the proxies issued by KLA to its stockholders constituted a communication with respect to the sale of securities concerning decisions of KLA stockholders with respect to voting their securities. See Huang, 2008 WL 648519 at *6; Pace v. Bidzos, 2007 WL 2908283 at *2 (N.D. Cal. Oct. 3, 2007); Indiana Elec. Workers Pension Trust Fund v. Millard, 2007 WL 2141697 at *6-8 (S.D.N.Y. Jul. 25, 2007); City of Ann Arbor Employees' Ret. Sys. v. Gecht, 2007 WL 760568 at *4-6 (N.D. Cal. Mar. 9, 2007).

Defendants attempt to distinguish these cases by noting that the plaintiffs in those actions did not make preempted "holding" claims. However, Plaintiffs' holding claims have been dismissed; the question is whether the "voting" claims fall within the Delaware carve-out. They do.

**E.     The Voting Claims are Remanded**

Defendants maintain that Plaintiffs' allegations do not meet the requirements of the second prong of the Delaware carve-out because Plaintiffs' "voting claims" are

7

derivative, rather than direct allegations. Defendants rely on the state court's determination that the damages that Plaintiffs alleged with respect to their voting rights are derivative claims "unless a plaintiff alleges a harm that is unique to plaintiff as a shareholder, rather than a harm that impacts all shareholders on an equal basis." See Opposition to Motion to Remand at 2. Defendants argue that the state court relied on this reasoning in dismissing the original complaint with leave to amend.

If Defendants are correct and Plaintiffs' voting claims are derivative, that is, they can only be brought on behalf of the corporation and not as a class action, then they are not subject to SLUSA; they are simply state law derivative claims. Thus, in either case they are state law claims not subject to SLUSA preemption: (1) they are class claims that fall within the SLUSA Delaware carve-out, or (2) they are derivative claims not subject to SLUSA. At best, then, the Court has supplemental jurisdiction of the voting claims.

Defendants make several arguments why this Court should exercise supplemental jurisdiction of the state claims, determine that they are derivative, and dismiss them as failing under state law.

First, they rely on In re Lord Abbett Mut. Funds Fee Litig., 463 F. Supp. 2d 505 (D.N.J. 2006) for the proposition that SLUSA was intended to mandate dismissal of entire actions when the lawsuit alleges at least one SLUSA-preempted claim. In Lord Abbett, the court held that because SLUSA defines "covered class actions" as "lawsuits" rather than "claims, counts, or allegations in a complaint," Congress intended SLUSA to have a broad preemptive scope and preempt all claims within a lawsuit if that lawsuit contained one or more claims subject to SLUSA. 463 F. Supp. 2d at 511-12; see also 15 U.S.C. § 78bb(f)(5)(B).

The Court is unpersuaded; it does not make sense that Congress would intend to bar legitimate claims simply because they are brought under the umbrella of a lawsuit containing some SLUSA-preempted state law claims. See In re Am. Mut.

8

Funds Fee Litig., 2007 U.S. Dist. LEXIS 8276 at *21-22 (C.D. Cal. Jan. 18, 2007) (holding that because there is no reason why Congress would intend to limit legitimate claims, the phrase "covered class action" should be interpreted to mean lawsuits or the parts of a lawsuit "that assert the claims Congress meant to eliminate".). Further support for the Court's conclusion is found in cases noting that the purpose of SLUSA is to bar only particular state securities claims alleging fraud. See Dabit, 547 U.S. at 82; Falkowski, 309 F.3d at 1128; Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 122-23 (2d Cir. 2003).

Second, Defendants cite LaSala v. Bordier et Cie, 519 F.3d 121 (3d Cir. 2008), for the proposition that the Court must determine if the claims are derivative before addressing whether the SLUSA exemption applies to the voting claims. In LaSala, however, the court had to determine the nature of the claims before discussing SLUSA preemption because the claims were brought by a Trust to whom claims had been assigned, and the court therefore had to ensure that the Trust owned the claims they were making. Id. at 133.

Third, Defendants argue that since the complaint was properly removed under SLUSA in the first place, the Court can only remand the non-dismissed claims (the voting claims) if the Court determines that the voting claims may be "maintained" in state court. As support for their "maintained" argument they rely on SLUSA's remand provision which states:

> (D) Remand of removed actions
>
> In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action ***may be maintained*** in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

15 U.S.C. § 78bb(f)(3)(D) (emphasis added). Again, Defendants argue that the voting claims cannot be maintained in state court because they are actually derivative, and the state court has already ruled that Plaintiffs cannot make such derivative claims.

9

This argument fails for two fundamental reasons. The statute does not recite that the Court *may only* remand when the action can be maintained in state court; it provides that the Court *shall* remand; thus, the statute limits the court's discretion to exercise jurisdiction, it does not limit its discretion to decline to exercise supplemental jurisdiction.

Moreover, the previous section setting forth the "Delaware carve-out" explains what "may be maintained" means:

> (i) Actions preserved
>
> Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) ***may be maintained*** in a State or Federal court by a private party.

15 U.S.C. § 78bb(f)(3)(A)(i) (emphasis added). In other words, "may be maintained" simply means the plaintiff may bring the claim in state or federal court; it does not mean that this Court has to make an inquiry into the merits of the claims under state law before remanding. It is thus unsurprising that Defendants do not cite any cases that discuss, let alone adopt, their novel reading of the statute.

Finally, Defendants correctly observe that Count I of the SAC recites that Plaintiffs' breach of fiduciary duty claims are being brought under Delaware *and* California law. See SAC at ¶ 79. The Delaware carve-out exemption only applies if the state claim is brought under the state of incorporation, here, Delaware. In response to an Order asking Plaintiffs if they in fact intend to make a claim under California law, Plaintiffs responded that they do not and, indeed, cannot; their fiduciary duty claims must be brought under Delaware law. Thus, the Court will construe the claims of the SAC as being brought only under Delaware law.

## CONCLUSION

As the "holder" claims are preempted by SLUSA, they are DISMISSED with prejudice. The Court in its discretion determines that it makes the most sense to have the state court that initially reviewed the state claims once again determine whether

1  the complaint makes valid claims under state law.  Accordingly, the "voting" claims

2  are REMANDED to state court.

3  **IT IS SO ORDERED.**

Dated: Sep. 17, 2008

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE